STATE *ex rel.* HOWARD WILLIAM MOATS

*v.*

JOSEPH JANCO, *Sheriff, etc.*

(No. 12979)

Submitted on Rehearing February 16, 1971.

Decided March 16, 1971.

Dissenting Opinions March 26 and 29, 1971.

*Thomas C. Cady,* for appellant.

*Chauncey H. Browning, Jr.,* Attorney General, *George E. Lantz,* Deputy Attorney General, *Willard A. Sullivan,* Assistant Attorney General, for appellee.

HAYMOND, JUDGE:

This habeas corpus proceeding is here upon appeal by the petitioner, Howard William Moats, from the final judgment of the Circuit Court of Monongalia County rendered October 24, 1969, which refused to require the defendant, Joseph Janco, Sheriff of Monongalia County, to release the petitioner from the jail of Monongalia County where he was confined pursuant to a judgment of William M. Bowers, Justice of the Peace of Morgan District, Monongalia County, rendered October 18, 1969, which imposed upon the petitioner a fine of fifty dollars or imprisonment in the county jail for a period of thirty days.

This appeal was granted by this Court June 29, 1970, and was originally submitted for decision upon the record and the briefs and the oral arguments of the attorneys for the respective parties on September 15, 1970.

Upon the petition of the defendant a rehearing of the case was granted January 25, 1971, and upon the rehearing this proceeding was submitted for decision upon the record and the original briefs and additional briefs, and the oral arguments of the attorneys for the respective parties on February 16, 1971.

After the Circuit Court of Monongalia County refused to admit the petitioner to bail, this Court, in a separate original habeas corpus proceeding, by order entered October 28, 1969, directed the Circuit Court of Monongalia County to release the petitioner on his own recognizance in the amount of $100.-00 pending an application for an appeal in this proceeding and pursuant to the order of this Court the petitioner was released from custody October 29, 1969, after having served eleven days of the thirty day sentence imposed by the justice.

There is little, if any, dispute in the material facts disclosed by the record.

About 6:00 o'clock Friday evening, October 17, 1969, the petitioner was arrested by Trooper J. R. Rogers in Grant District of Monongalia County and was placed in the county jail in Morgantown until approximately 11:00 o'clock Saturday morning, October 18, 1969, when he was taken before William M. Bowers, Justice of the Peace of Morgan District, and served with a warrant charging him with the offense of driving a vehicle on a highway of this State while under the influence of intoxicating liquor which, under Section 2c, Article 5, Chapter 17C, Code, 1931, as amended, is a misdemeanor for a first offense, and any person convicted of such offense shall be punished by imprisonment in the county jail for a period of not less than twenty-four hours nor more than six months and in addition to the mandatory jail sentence may be fined not less than fifty dollars nor more than one hundred dollars and the operator's or chauffeur's license of such person shall be revoked for a period of six months.

The justice read and explained the warrant to the petitioner who stated that he understood the offense and the sentence that could be imposed and when asked if he desired to plead guilty said that he did and entered a plea of guilty. Before

entering the plea he was asked by the justice if he wanted an attorney and replied that he had no money and he was not provided with the assistance of an attorney for his defense. Upon the plea of guilty the justice imposed a sentence which was entered in his docket in this form: "The defendant is committed to the county jail for thirty days in lieu of fine and cost." In his testimony, however, the justice stated with reference to that sentence: "I gave him a fine and costs of fifty dollars, or thirty days." At the time of his arrest the petitioner was nineteen years of age, was indigent and unable to employ an attorney, had no money except a nickel in his possession, owned property consisting of his clothes and household articles of the value of fifty dollars and an automobile of the value of sixty dollars, was unemployed, lived in a one room house, with no inside water or toilet facilities, for which he paid ten dollars a month rent, and received as his only income one hundred and thirty eight dollars a month from public welfare.

The errors assigned and relied on by the petitioner for reversal are that upon his trial he was denied due process of law and equal protection of law because the justice of the peace (1) was without professional legal training and not licensed as an attorney; (2) was pecuniarily interested in the disposition of the case; (3) the petitioner was denied the assistance of counsel which as an indigent he was unable to employ; (4) was subjected to cruel and unusual punishment, excessive fine, and involuntary servitude because too poor to pay the fine and costs assessed against him; and (5) was sentenced to the county jail for thirty days in lieu of fine and costs, in violation of the statue which limits confinement to a period of ten days.

No appeal from the judgment of the justice of the peace has been applied for or granted and if it is a valid or voidable judgment, instead of a void judgment, it is in full force and effect and enforceable against the petitioner.

There is no merit in the contention of the petitioner that his conviction and sentence by the justice of the peace were violative of due process of law because the justice of the peace

was without professional legal training and was not licensed as an attorney at law. Article VIII, Section 1, of the Constitution of this State provides that "The judicial power of the State shall be vested in a supreme court of appeals, in circuit courts and the judges thereof, in such inferior tribunals as are herein authorized and in justices of the peace." The office of justice of the peace in this jurisdiction is a judicial office. That office is established by Article VIII, Section 27, of the Constitution of this State, which provides that each county shall contain districts "not less than three nor more than ten in number, and as nearly equal as may be in territory and population", that "There shall be elected in each district containing a population not exceeding twelve hundred, one justice of the peace, and if the population exceeds that number, two such justices shall be elected therein", and that "Every justice shall reside in the district for which he was elected". Article VIII, Section 28, of the Constitution of this State also provides that "The jurisdiction of justices of the peace shall extend throughout their county; they shall be conservators of the peace and have such jurisdiction and powers in criminal cases as may be prescribed by law." See *State ex rel. Ralich v. Millsop*, 138 W.Va. 599, 76 S.E.2d 737.

Section 1, Article 18, Chapter 50, Code, 1931, as amended, confers criminal jurisdiction upon justices of the peace of the various offenses mentioned in the section; and Section 9, Article 19, Chapter 17C, Code, 1931, as amended, provides that justices of the peace shall have concurrent jurisdiction with the circuit, criminal and intermediate courts of the misdemeanors created by Chapter 17C, which include the offense of which the petitioner was convicted by the justice of the peace.

The Constitution prescribes no qualification for a justice of the peace except the requirement of Article VIII, Section 27, that he must reside in the district for which he was elected and the requirement of Article IV, Section 4, that he must be a citizen entitled to vote; and there are no additional qualifications prescribed for a justice of the peace such as legal training or the status of a duly licensed attorney at law as contended by the petitioner. Though no person may engage

in the practice of law unless he is a duly licensed attorney at law, a justice of the peace, in the trial and disposition of a case of which he has jurisdiction, is not engaged in the practice of law but instead acts in a judicial capacity and is engaged in the discharge of a judicial function. This Court has said that a commissioner of accounts of a county court is a county officer, that his qualifications are not prescribed by statute, *State ex rel. Archer v. County Court of Wirt County,* 150 W.Va. 260, 144 S.E.2d 791, that in the performance of his duties as commissioner he acts in a judicial capacity and is not engaged in the practice of law and that a person who is not an attorney at law may be appointed to that position. *State ex rel. Thorn v. Luff,* 154 W.Va. 350, 175 S.E.2d 472.

In view of the foregoing this Court holds that a duly elected justice of the peace who resides in the district for which he was elected is authorized and empowered to exercise within the county in which such district is located the jurisdiction conferred upon him by the Constitution and the statutes of this State; and his lack of professional legal training and his inability to attain the status of a duly licensed attorney at law do not of themselves render his judgment of conviction of a defendant of a criminal offense of which the justice has jurisdiction violative of the due process clauses of the Federal and State Constitutions.

There is likewise no merit in the contention of the petitioner that the justice of the peace was under pressure to convict the petitioner in order to favor the arresting officer because the failure of the justice to convict persons arrested and brought before him by the arresting officer would induce the arresting officer to take an accused before another justice and in that way decrease the income of the justice and cause him to lose this potential source of income and the foregoing situation produced a pecuniary interest in the justice which disqualified him from trying the petitioner and rendered void the judgment against the petitioner as violative of due process of law. There is no evidence in the record to indicate that the justice or the arresting officer, in the trial of the offense charged against the petitioner, engaged in any such practice or conduct. For that reason that question, not being properly

presented for decision, is not considered or determined upon this appeal.

The compensation of a justice of the peace, which is derived from the fee system, is provided for by the statute law of this State.

Section 11, Article 17, Chapter 50, Code, 1931, as amended, provides, to the extent here pertinent, that "Every justice shall be entitled to a fee of four dollars in each criminal case and proceeding before him, which fee shall constitute his compensation for all official services performed by him in connection with any single case, including affidavit for warrant, search and seizure warrant, warrant for arrest, trial examination, issuing subpoenas and copies thereof, warrant summoning and swearing a jury when required, swearing and certifying attendance of witnesses, entering judgment and taxing costs and all other acts in connection herewith . . . except, that he shall be allowed an additional fee of fifty cents for making and certifying a transcript of his docket in any particular case and transmitting the same to the clerk of the circuit court, the State road commissioner, or any other office in which he may be by law required to certify such transcript, and two dollars for bond or recognizance, to be paid by defendant. And no other fees shall be taxed or charged by any justice in such cases and proceedings. * * *."

Section 4, Article 3, Chapter 17B, Code, 1931, as amended, provides, in part, that whenever a conviction is had in the court of a justice of the peace for the violation of any law of this State governing or regulating the licensing or operation of any motor vehicle, the justice shall transmit to the department of motor vehicles within seventy-two hours after such conviction a certified abstract of the judgment of such conviction. This requirement occurs only in case of conviction and unless the justice convicts an accused he does not obtain this fee. It may, therefore, properly be considered as an inducement to convict an accused which produces a pecuniary interest, although manifestly slight in each single case, and if charged or earned, results in his disqualification to try and convict the accused. The same comment applies to the provision of the

statute which provides a fee of two dollars for bond or recognizance which occurs only in case of conviction of the accused, although in this instance no such fee was earned by the justice who did not permit the petitioner to be released on bail. These provisions allowing the fee of fifty cents and the fee of two dollars, to which the justice is entitled only in the event of the conviction of the accused, produce a pecuniary interest in the justice and are violative of the due process of law provisions of the Fifth and Fourteenth Amendments to the Constitution of the United States and Article III, Section 10, of the Constitution of this State, and as the fee for making the transcript was not waived by the justice, the judgment of conviction is null and void. *Tumey v. Ohio*, 273 U.S. 510, 47 S. Ct. 437, 71 L. Ed. 749, 50 A.L.R. 1243; *Doty v. Goodwin*, 246 Ark. 149, 437 S.W.2d 233; *State ex rel. Osborne v. Chinn*, 146 W.Va. 610, 121 S.E.2d 610; *Williams v. Brannen*, 116 W. Va. 1, 178 S.E. 67.

In headnote 1 of the *Tumey* case there is this statement: "To subject a defendant to trial in a criminal case involving his liberty or property before a judge having a direct, personal, substantial interest in convicting him is a denial of due process of law." In the opinion in that case, which was prepared by Chief Justice Taft, are these expressions: "All questions of judicial qualification may not involve constitutional validity. Thus matters of kinship, personal bias, state policy, remoteness of interest, would seem generally to be matters merely of legislative discretion. *Wheeling v. Black*, 25 W.Va. 266, 270. But it certainly violates the Fourteenth Amendment, and deprives a defendant in a criminal case of due process of law, to subject his liberty or property to the judgment of a court the judge of which has a direct, personal, substantial, pecuniary interest in reaching a conclusion against him in his case" and "Every procedure which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the State and the accused, denies the latter due process of law."

In the *Doty* case, a prosecution for reckless driving, the Supreme Court of Arkansas held that liability of the defendant, if convicted, for the fees of the justice of the peace constituted a denial of due process under the rule that a judge in a criminal case must not have a pecuniary interest in convicting the accused.

In the *Osborne* case, in which the writ of prohibition was awarded against the justice because of his pecuniary interest in a criminal case pending before him, this Court held that an act of the Legislature, Chapter 71, Acts of the Legislature, Regular Session, 1961, which provided that the salaries of justices of the peace should be payable solely out of a special justice's account which consisted of fines, fees, costs and other money obtained from cases tried by the justice, and placed in the general county fund, was violative of the due process clauses of the Federal and State Constitutions and was unconstitutional. Points 1 and 3 of the syllabus in that case are couched in this language: "Where a justice of the peace has any pecuniary interest in any case to be tried by him, however remote, he is disqualified from trying such case" and "The common law principle which remains today in full force and effect in this state that no man can be judge of his own case applies as well to a case in which a judge or magistrate is interested as to one in which he is a party."

In the *Williams* case, also a proceeding in prohibition, this Court held unconstitutional certain provisions of Section 14, Article 17, Chapter 50, and Section 15, Article 5, Chapter 7, Code, 1931, then in effect and which, before their amendment by the statutes now in force and effect, created only two sources of compensation for a justice in misdemeanor cases. These were costs paid by the accused when convicted and the fund accumulated in the hands of the sheriff from fines assessed by the justices. The Court recognized and applied the maxim that no man can be a judge of his own case and said in point 1 of the syllabus that the maxim applied to a case in which a judge or a justice of the peace is interested as well as to one to which he is a party.

Under the foregoing authorities it is clear that a justice of the peace is disqualified from acting in a criminal case in which he has a pecuniary interest, however remote, and that a judgment of conviction rendered by him in such case is void because violative of the due process clauses of the Federal and State Constitutions.

This Court has said in several cases, among them *City of Grafton v. Holt,* 58 W.Va. 182, 52 S.E. 21, 6 Ann. Cas. 403; *Forest Coal Company v. Doolittle,* 54 W.Va. 210, 46 S.E. 238; and *Findley v. Smith,* 42 W.Va. 299, 26 S.E. 370, that a judgment rendered by a judge who is disqualified by reason of his interest, is voidable, not void, where the disqualification is not statutory but rests upon the common law, although that distinction is criticized in the opinion in the *Forest Coal Company* case. In the *City of Grafton* case and the *Forest Coal Company* case, a writ was awarded prohibiting the interested judge from proceeding in the case, and in the *Findley* case a decree entered by the interested judge was reversed on appeal. Each of those cases was a civil suit or action and did not involve the personal freedom of an accused who seeks relief in a habeas corpus proceeding from a void judgment, as here, or any fee as compensation for the judge, and for those reasons they are distinguishable from the decision in the case at bar. In the *City of Grafton* and *Forest Coal Company* cases the maxim *"nemo debet esse judex in propria causa",* meaning "no man ought to be a judge in his own cause" was recognized and applied. In the *Findley* case this Court said that the maxim was a fundamental rule that must be held sacred; and in the *City of Grafton* case this Court said that the maxim remains inviolate in this State.

In the criminal case of *State v. Simmons,* 117 W.Va. 326, 185 S.E. 417, the defendant was found guilty by a justice of the peace of the offense of operating a motor vehicle on a public highway while under the influence of intoxicating liquor and his conviction was affirmed by the circuit court on appeal. The case was tried by the justice before repeal of statutes relating to the compensation of justices which were held to be unconstitutional in *Williams v. Brannen,* 116 W.Va. 1, 178 S.E. 67, and this Court held, under the particular facts

of the *Simmons* case that the failure of the defendant to raise the question of the disqualification of the justice because of the unconstitutional method provided for the payment of fees by the prior statutes constituted a waiver of the disqualification of the justice. The statement in the opinion in that case, upon the authority of the civil case of *City of Grafton v. Holt*, 58 W.Va. 182, 52 S.E. 21, 6 Ann. Cas. 403, that "The action of a judicial officer who was disqualified by personal interest is voidable, not void," is expressly disapproved.

The provision of Section 11, Article 17, Chapter 50, Code, 1931, as amended, which allows a justice of the peace a fee of four dollars in each criminal case as compensation for all official services performed by him in any single case, including his specified incidental services, and the provision of Section 15, Article 5, Chapter 7, Code, 1931, as amended, which authorizes the payment of the fee of four dollars from the general school fund or the general county fund by order of the county court on the sheriff are constitutional and valid. The funds from which the fee of the justice is payable contains moneys produced by tax levies instead of from a special fund derived from fees and costs, collected by the justice and his fee is not payable exclusively from fees and fines collected by the justices, such as the special funds held to be invalid in the *Williams* and *Osborne* cases. The foregoing statutory provisions insure the payment of the fee of the justice and its payment, not being dependent upon either the conviction or the acquittal of the defendant, does not produce an interest which disqualifies the justice from acting in criminal cases of which he has jurisdiction. The controlling distinction between the payment of the fee of the justice involved in the *Williams* and *Osborne* cases and the fee of the justice involved in this case is, as indicated in the quotation from *Dugan v. Ohio*, 227 U.S. 61, 48 S. Ct. 439, 72 L. Ed. 784 in the opinion in the *Williams* case, that the justice (there the mayor) "receives his salary in any event, whether he convicts or acquits."

It follows that the allowance of the fee of four dollars to a justice of the peace, under Section 11, Article 17, Chapter 50, Code, 1931, as amended, and its payment as provided in Section 15, Article 5, Chapter 7, Code, 1931, as amended, not

being dependent upon conviction or acquittal of the defendant, do not produce a pecuniary interest which will disqualify the justice from acting in a case of which he has jurisdiction. It is equally obvious, however, that the provision of Section 11, Article 17, Chapter 50, Code, 1931, as amended, which allows a justice a fee of fifty cents for preparing a transcript and a fee of two dollars for bond or recognizance mentioned in the section, being dependent upon the conviction of the defendant in a criminal case, is unconstitutional in that it produces a pecuniary interest in the justice which, if either fee is charged or such fees, if earned, are not waived by the justice, disqualifies him from acting in the case and renders his judgment of conviction of the defendant void because violative of due process of law.

The sentence imposed by the justice of the peace of a fine of fifty dollars or thirty days in jail, though irregular, was not of itself entirely invalid and would have been a valid sentence of imprisonment of thirty days but for the disqualification of the justice because of his pecuniary interest. The justice was without authority to impose a fine alone because the statute makes mandatory the sentence of imprisonment of at least twenty-four hours but not more than six months. The sentence of a fine, unless imposed as punishment in addition to imprisonment, was void because unauthorized by the statute, *State ex rel. Boner v. Boles,* 148 W.Va. 802, 137 S.E.2d 418; *State ex rel. Browning v. Tucker,* 142 W.Va. 830, 98 S.E.2d 740. The sentence of thirty days, however, being within the period of imprisonment authorized by the statute, would have been a valid sentence if the justice had not been disqualified to act. The sentence of thirty days was not imposed for the nonpayment of the invalid fine of fifty dollars and was not violative of Section 9, Article 18, Chapter 50, Code, 1931, which limits imprisonment for that cause to a period of ten days or for any other reason.

The judgment of conviction entered by the justice is void in the particulars heretofore indicated and it may be and is attacked and held to be unenforceable in this habeas corpus proceeding. *State ex rel. Widmyer v. Boles,* 150 W.Va. 109, 144 S.E.2d 322. "A void judgment, being a nullity, may be

attacked, collaterally or directly, at any time and in any court whenever any claim or right is asserted under such judgment." Point 3, syllabus, *State ex rel. Bradley v. Johnson,* 152 W.Va. 655, 166 S.E.2d 137; *State ex rel. Boner v. Boles,* 148 W.Va. 802, 137 S.E.2d 418; *State ex rel. Browning v. Tucker,* 142 W.Va. 830, 98 S.E.2d 740, and the many cases cited in the opinion in that case.

Since *Gideon v. Wainwright,* 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799, 93 A.L.R.2d 733, decided March 18, 1963, it is well established that a person prosecuted for a felony in a state court, who is unable to employ counsel and who does not waive his right to the assistance of counsel, is entitled to the appointment of counsel for his defense. Because of statements in the opinion in the *Gideon* case, such as "reason and reflection require us to recognize that in our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him", there has been rather widespread belief that the decision applied to some or all misdemeanors and placed them within the scope of the right to the assistance of counsel guaranteed by the Sixth Amendment to the Constitution of the United States. The subsequent refusal of the Supreme Court to review certain recent cases, among them *Winters v. Beck,* 239 Ark. 1151, 397 S.W.2d 364, *certiorari denied,* 385 U.S. 907, 87 S. Ct. 207, 17 L. Ed. 2d 137 and *State v. DeJoseph,* 3 Conn. Cir. 624, 222 A.2d 752, *certiorari denied,* 385 U.S. 982, 87 S. Ct. 526, 17 L. Ed. 2d 443, in each of which the question of the right of the accused to the assistance of appointed counsel in prosecutions for misdemeanors in state courts was involved, indicates that the decision in the *Gideon* case may not apply to prosecutions for misdemeanors.

In the absence of a decision of the Supreme Court of the United States on this specific question of the constitutional right of a defendant in a prosecution for a misdemeanor to the assistance of counsel, there are conflicts and some confusion in the decisions of the courts in the various jurisdictions on that point. Some federal court decisions, following the holding in *Gideon,* have held that the defendant is entitled

to the assistance of counsel for his defense in misdemeanor prosecutions. *James v. Headley,* 410 F.2d 325, (5th Cir.); *McDonald v. Moore,* 353 F.2d 106, (5th Cir.); *Harvey v. State of Mississippi,* 340 F.2d 263, (5th Cir.); *Evans v. Rives,* 126 F.2d 633 (D.C. Cir.). In *State v. Borst,* 278 Minn. 388, 154 N. W.2d 888, the Supreme Court of Minnesota held that in the trial of a misdemeanor in which the court may impose a sentence in a penal institution or a jail the defendant who is unable to procure counsel in his own behalf is entitled to have counsel appointed to represent him. In *State ex rel. Argersinger v. Hamlin,* (Fla.), 236 So. 2d 442, the Supreme Court of Florida, recognizing the classification of offenses as petty and serious, held that where it appears that the maximum term of imprisonment provided by statute for the offense charged against the defendant was six months and that he was actually sentenced to three months he was not entitled to court appointed counsel. In the habeas corpus proceeding of *In Re Johnson,* 42 Cal. Rptr. 228, 398 P.2d 420, the Supreme Court of California held that under the provisions of the Constitution of that State, the petitioner, who on his pleas of guilty had been convicted of misdemeanors consisting of traffic offenses, was entitled to the assistance of counsel at all stages of the proceedings.

In the absence of a decision of the Supreme Court of the United States upon the question, in view of the conflicting decisions in the various jurisdictions, and inasmuch as a decision with respect to the right of the petitioner to the assistance of counsel to represent him in the criminal proceeding before the justice of the peace is unnecessary in the decision of this proceeding, that question is not considered or determined, and no opinion is entertained or expressed upon that question.

The final judgment of the circuit court rendered October 24, 1969, dismissing this proceeding, is reversed and set aside, and this proceeding is remanded to that court with directions that the petitioner be released from any confinement by the defendant and that the recognizance heretofore required of the petitioner be cancelled and discharged.

As a general rule, when a rehearing is granted, the status of the case is the same as though no hearing had occurred. 3 AM. JUR., *Appeal and Error*, Section 810. The granting of a rehearing withdraws an opinion previously rendered and destroys its force and effect unless it is subsequently adopted by the same tribunal. 3 AM. JUR., *Appeal and Error*, Sections 809 and 811; *Atlantic Greyhound Corporation v. Public Service Commission of West Virginia*, 132 W.Va. 650, 54 S.E.2d 169. By reason of the rehearing heretofore granted the majority opinion and the dissenting opinions heretofore filed in this case are withdrawn and held for naught.

> *Reversed and remanded with directions.*

BROWNING, JUDGE, dissenting:

I dissent. However, I am in agreement with all of the questions decided by the majority except the holding that the fees provided by Code, 50-17-11, as amended, hereinafter referred to as Section 11, disqualified the justice from acting in the case and rendered his judgment therein void. However, there is, especially in view of the very recent decision of *Tate v. Short*, 401 U.S. 395 (1971), much to be said for the position of the other dissenting Judge to the effect that the judgment of "thirty days or $50.00 fine" was void, therefore making it unnecessary to reach the question of the constitutionality of Section 11. If there had been a majority for holding the judgment void upon that ground I could have in good conscience gone along. However, I do not agree with the majority in evading one of the principal issues in this case which was the question of whether this indigent defendant was entitled to counsel at or before his arraignment. That question was decided by the trial court, it was assigned as error in this Court, and I am bewildered at the action of the majority in not passing upon that question and believe the reasons assigned for not doing so to be utterly without validity. The same Judges did pass upon that question as did the two dissenting Judges in this case when it was originally decided,

and it is my opinion that the majority Judges have left themselves open to the charge that they evaded and failed to decide that question in order that they could reach the issue of the constitutionality of Section 11 and thereby, by judicial fiat, destroy the justice of the peace system of this State.

This is the only reason given by the majority for not deciding whether the judgment of the justice was void because the defendant was not furnished with counsel at or prior to his entering his plea of guilty:

> In the absence of a decision of the Supreme Court of the United States upon the question, in view of the conflicting decisions in the various jurisdictions, and inasmuch as a decision with respect to the right of the petitioner to the assistance of counsel to represent him in the criminal proceeding before the justice of the peace is unnecessary in the decision of this proceeding, that question is not considered or determined, and no opinion is entertained or expressed upon that question.

In two fairly recent cases, *Winters v. Beck*, 239 Ark. 1151, 397 S.W.2d 364 (1965), *cert. denied*, 385 U.S. 907 (1966), and *State v. DeJoseph*, 3 Conn. Cir. 624, 222 A.2d 752 (1966), *cert. denied*, 385 U.S. 982 (1966), in which the defendants had been denied counsel in a state court upon trials for misdemeanors, the Supreme Court denied certiorari, thereby refusing to review the decisions of the lower court and strongly indicating that that Court has no intention of extending the rule in the *Gideon* case to misdemeanors. (In the *Winters* case, the defendant, although pleading not guilty, was denied counsel, convicted and given a 9-month jail sentence.) If this Court had decided the counsel question, reversed the judgment of the trial court and released the prisoner upon the ground that failure to provide him with counsel violated the due process clauses of the Constitution of the United States and of this State, then it could not have, for reasons hereinafter to be stated, reached the question of the constitutionality of Section 11 without overruling a long line of decisions of this Court.

This is the fifth syllabus point of *State ex rel. Titus, v. Hayes,* 150 W.Va. 151, 144 S.E.2d 502 (1965): "When it is not necessary in the decision of a case to determine the question of the constitutionality of a statute, this Court will not consider or determine such question." Five previous decisions of this Court are cited in support of that holding. Although, as stated in my dissent to the original majority opinion before the rehearing, the judgment of the justice was not void by virtue of the defendant not being furnished with counsel prior to his plea, the granting of the writ in this case upon that ground would not have been as disastrous to the judicial system of this State as the Court's decision holding that the $2 and $.50 fees provided by Section 11, the receipt of which are contingent upon the conviction of a defendant, disqualifies a justice of the peace from sitting in a criminal case where there is a remote possibility that he may receive either or both such fees. However, I assume that even if we could have thereby avoided deciding these issues in this case, it would only have been a matter of time until both questions would have been presented in proper cases just as it will not be long before the counsel question will again be presented in a proper case.

To repeat, I am in firm disagreement with the majority in holding that the $2 and $.50 fees provided in Section 11 are violative of any provision of the Constitution of this State or of the United States. Even if the $2 and $.50 fees provided for in Section 11 were violative of the due process clauses of the Constitution of the United States and of this State upon a factual showing that a defendant's rights had been adversely affected thereby, it is clear from this record that this petitioner cannot successfully contend that his rights were violated for reasons hereinafter to be stated. This is not a declaratory judgment proceeding and no person can avail himself of any constitutional guarantee unless he has been adversely affected by the provision of the Constitution upon which he relies.

The justice in this case could not possibly have been influenced in his decision by the possibility of receiving these fees inasmuch as the defendant pleaded guilty to the charge of driving a motor vehicle upon a public highway while

intoxicated. Actually he emphasized his guilt by saying that he was so drunk he did not know what road he was on when he was arrested.

It must be remembered that this is a collateral attack upon the judgment of the justice and that if appellant is to be released in this habeas corpus proceeding it must be upon the ground that the judgment was absolutely void. The majority held that the judgment was void because of the denial of due process of law as guaranteed by the Constitution of the United States and the Constitution of this State and based its conclusion upon the presumption that the justice convicted the defendant in the expectation or hope that he would thereby and thereafter receive the additional fees of $2 and $.50 as provided by the statute. It is clear by the record that he received neither the $2 fee nor the $.50 fee, and if he transmitted the record of the conviction, he did so at his own expense. It is certainly true that this justice could not have been influenced by any future expected financial gains by accepting a guilty plea from this defendant. The defendant replied, when asked if he wanted to employ a lawyer, that he only had a "nickel" in his pocket. The record shows that defendant and his family were on "welfare."

As is usual upon appeals and writs of error to this Court from a judgment of a circuit court, there are many assignments of error. I agree with the majority in finding that a justice of the peace need not be an attorney. I also agree with some reluctance that this justice imposed a valid sentence, thirty days, which he had a right to do under the statute, even though the judgment is ambiguous. This, however, may be questionable in light of the aforementioned *Tate* case.

The conviction in this case for operating a motor vehicle upon a public highway while intoxicated is under the provisions of Chapter 17B, Article 3, Section 4, of the Code, as amended, and if the possibility in such a case that a justice might receive a fee of $.50 for certifying a transcript of his docket to the commissioner of motor vehicles and a fee of $2 if the defendant sought and was granted bond produced "a pecuniary interest in the justice which disqualifies him from

acting in the case," as held in the fourth syllabus point of the majority opinion, then the same rule must apply to all criminal cases of which a justice has jurisdiction. Section 11, provides that "every justice shall be entitled to a fee of four dollars in *each criminal case* and proceeding before him," which he shall receive whether he finds a defendant guilty or not guilty and that fee is paid by the taxpayers out of the county treasury. (Emphasis added.) But Section 11 provides for the fee of $.50 for making and certifying the transcript of his docket in any case to the clerk of the circuit court or other court or any other office in which he may be by law required to certify such transcript, and $2 for bond or recognizance to be paid by defendant. In no criminal case could the justice receive the $.50 fee nor the $2 fee unless he found the defendant guilty. Therefore, it would appear that this Court may have abolished the justice of the peace system insofar as it relates to criminal cases.

Even if the decision of the majority may be construed as applying the severability rule to the constitutionality of Section 11, that is, holding that the justice has jurisdiction in certain misdemeanor cases and is entitled to a fee of $4, but that the further provisions of the section permitting him fees of $2 and $.50 for services rendered subsequent to the entry of judgment are invalid, the effect on the judicial process of this State is just as devastating as if the whole section had been rendered invalid. The first part of the section clearly points out the duties to be performed by the justice from the issuance of the warrant to the final entry of judgment as being a part of the trial for which he earns the $4 fee. The opinion of this Court in *Titus* makes it clear that the $2 fee for bond and the $.50 fee for certification of a copy of the docket of the justice to the court of the county having jurisdiction of criminal appeals is not a part of the trial and it cannot be taxed as costs against the defendant. The same rule will apply, of course, to the $.50 fee for supplying a copy of his docket showing a conviction for driving drunk to the commissioner of motor vehicles. It is evident then if the justice cannot receive any compensation for services rendered subsequent to the trial as provided by this section then he being a constitutional

officer whose only compensation is by means of the fee system, he could not be required to perform the services and pay the expenses of preparing a copy of his docket and transmitting it to the court or administrative official which the section provides that he shall do. The decision of the majority upon this issue may have created a dilemma that not even the legislature can resolve, for if the legislature should amend Section 11 to provide that the $2 and $.50 fees provided for therein shall be paid out of the county treasury as is the $4 fee for trial of a criminal case by the justice and not to be paid by the defendant, that would merely compound the invalidity of those fees, if it may be assumed or even presumed that justices decide cases before them not upon the law or the evidence but in such manner as provides them the highest financial returns. If those fees were to be paid out of the county treasury, there would be more temptation for the justice to find a defendant guilty than at present, for then he would know that all he had to do to receive his fees would be to file his bill with the county court at the end of each month and it would be paid. Under the present provisions of the statutes, as was held in *Titus,* the defendant does not have to pay the $2 fee in order to give bond, and he cannot be punished by imprisonment or otherwise for failure to pay that fee. To repeat, I would assume that the same rule would be applicable to the $.50 fee for supplying a transcript of the docket of conviction to the commissioner of motor vehicles.

Under the present statute the defendant at least is responsible for payment of the fees if the justice can collect them, but now that the majority has held that they are in violation of the constitution, it would appear that the justice cannot by mandamus or otherwise be required to employ clerical assistants at his own expense to prepare such information and send it to the places provided for by the Code. The effect of the decision will be calamitous not only to justices of the peace but to police officers, prosecuting attorneys, the commissioner of motor vehicles, courts of record having criminal jurisdiction (most of whose dockets are already overcrowded), and, probably most of all, the plaintiff in every criminal case, whether it be a felony or a misdemeanor, the people of the State of

West Virginia. I am in agreement with decisions of this Court and the courts of other jurisdictions cited in the majority opinion in support of its holding upon this issue, but I am firmly of the opinion that not one is remotely in point.

This Court unanimously held in *State ex rel. Osborne v. Chinn*, 146 W.Va. 610, 121 S.E.2d 610 (1961), that an act of the legislature providing for justices of the peace of Kanawha County to be paid salaries solely out of a separate or special fund, the fund to be created from fines, fees, costs and other monies obtained from cases tried by justices of the peace, was violative of the due process clauses of the state and federal constitutions. If there was not sufficient money in that fund to pay the salaries of the justices, there was no provision for the payment thereof.

In *Williams v. Brannen*, 116 W.Va. 1, 178 S.E. 67 (1935), an act of the legislature which provided only two sources of compensation by a justice of the peace in misdemeanor cases, (1) costs paid by the accused when convicted, and (2) a fund accumulated in the office of the sheriff of the county from fines assessed by the justice, was held to be in violation of the constitution. Neither of those cases is in point inasmuch as the present statute provides that the justice of the peace shall be paid a fee of $4 for the trial of a misdemeanor case whether he finds the defendant guilty or not guilty, and his compensation comes from the general revenue fund of the county and it is not dependent whatever upon the number of convictions that he or other justices may have rendered.

In *Tumey v. Ohio*, 273 U.S. 510 (1927), a statute provided that a mayor of a town receive no compensation for trying a criminal case unless he found the defendant guilty. The Court, of course, held that statute to be in violation of the Constitution of the United States. In *Doty v. Goodwin*, 246 Ark. 149, 437 S.W.2d 233 (1969), the Supreme Court of Arkansas, logically held that a statute which provided that a defendant, if convicted by a justice of the peace, was required to pay the fee of the justice for conducting the trial was violative of the constitution of that state and of the United States. The majority cites no other cases in support of its decision upon this

issue. It is my opinion that neither of the fees involved in this case violates any provision of the Constitution of the United States or of this State. Furthermore, it is my opinion that the $2 and the $.50 fees are so small that they may be properly ignored as within the maxim *de minimis non curat lex*. Incidentally, in the *Tumey* case, cited in the majority opinion as authority for holding the fees in Section 11 to be violative of due process, the court stated that if the fees were of a *de minimis* nature they would come within that rule and not be violative of due process. The fees in the *Tumey* case amounted to $12, several times the fees provided by Section 11.

If it may be presumed (apparently the majority has so presumed) that a justice of the peace, a constitutional officer elected by the people, would, in a criminal case, disregard the law and the evidence and violate his oath of office and find a defendant guilty when he was of the opinion that he was not guilty in order to enrich himself by the possibility of receiving the $2 and $.50 fees, it may be difficult for the majority to distinguish the rule laid down in this case in criminal cases from the trial of civil cases of which justices of the peace have jurisdiction in a limited degree. In civil cases the justice receives compensation for trial of the case regardless of whether he finds a judgment for the plaintiff or the defendant just as in a criminal case, but if he finds judgment for the plaintiff, it is probable, not just "remotely possible," that under the provisions of Chapter 50 of the Code, the justice may receive additional costs or "fees," for example, for issuing execution upon the judgment for sale of the defendant's property to satisfy the judgment or for attachment of the defendant's wages to satisfy the judgment. The possibility of additional financial enrichment by finding a verdict for a plaintiff in a civil case far exceeds that for finding a defendant guilty of a charge of drunk driving, for example, or for any other misdemeanor. A litigant may be deprived of due process of law in a civil case as well as in a criminal case.

It may be true that the office of justice of the peace is outdated, that it should be abolished and that courts of record should be created having jurisdiction of misdemeanors and

limited jurisdiction in civil cases perhaps similar to or greater than the jurisdiction now conferred upon justices of the peace. However, this Court does not have the authority to abolish that office, nor does the legislature. It is a judicial office and is clearly provided for under Article VIII, Section 1 of the Constitution of this State which provides, "The judicial power of the State shall be vested in a supreme court of appeals, in circuit courts and the judges thereof, in such inferior tribunals as are herein authorized and in justices of the peace." For 90 years that provision in that article relating to justices of the peace has not been disturbed and only the people by their vote, if the question is submitted to them by the legislature, can abolish that office. Furthermore, the legislature has not seen fit to compensate justices of the peace (except in counties having a population of 200,000 or more and there is only one such county in the state) except by the fee system. This Court does not have the authority to change that manner of compensating justices of the peace unless, of course, an act of the legislature is clearly in violation of the constitution, although the presumption is always to the contrary.

My astonishment at this incredible decision of this Court which in effect abolishes the constitutional office of justice of the peace which, as heretofore stated, is provided for in the same sentence of the Constitution which created this Court, is such that for once I am speechless. Fortunately, I do not have to speak, for my position is eloquently expressed by the language used in the dissenting opinion of *Lance v. Board of Education of County of Roane,* 153 W.Va. 559, 170 S.E.2d 783 (1969):

> I am amazed, shocked and deeply distressed at the unprecedented and constitutionally unauthorized decision of the majority of this Court in this proceeding by which it undertakes to invalidate certain statutory provisions and two provisions of Sections 1 and 8, Article X of the Constitution of this State. By my oath of office as a Judge of this Court, which I consider binding in conscience, I swore to support, not to invalidate, the Constitution of this State and, with all the sincerity at my command and upon grounds and for reasons to be stated in this dissent, I dissent from the decision of the majority. It should be clearly

understood that in expressing my dissentient views, however, in this honest and sincere disagreement between my associates and me, my criticisms are directed, not to them, but to their decision.

With respect to the sanctity of an official oath to support a Constitution, the great Chief Justice, John Marshall, in the landmark case of *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, at page 178, 2 L. Ed. 60, used this language: "Why otherwise does it [the United States Constitution] direct the judges to take an oath to support it? This oath certainly applies in an especial manner, to their conduct in their official character. How immoral to impose it on them, if they were to be used as the instruments, and the knowing instruments, for violating what they swear to support!" Though these remarks were directed to the oath to support the Constitution of the United States they are applicable to an oath to support the Constitution of this State.

The Constitution of West Virginia is the fundamental, organic law of this State. It was made by the sovereign people of West Virginia and by them alone; and only the people of West Virginia, not this Court, can unmake that Constitution. It, and it alone, creates, maintains and preserves this State as a sovereign governmental entity and without it, intact and unimpaired in all its parts, this State can not exist or function as a sovereign governmental entity. All the departments and offices of the State Government of West Virginia, including its executive, its legislative and its judicial branches, are created by that Constitution and the power and the authority, in their entirety, which any of them possesses are derived solely from that Constitution and from no other source. That Constitution is equally binding on all the political subdivisions of the State and upon its courts, and every officer and every citizen within its territorial limits.

To say that this Court, the creature of the Constitution from which it derives all the power and the authority which it possesses, may invalidate that Constitution or any of its provisions, is incredible beyond my power of belief and any such utterance does not make sense to me.

That this Court is without authority to invalidate the Constitution of this State or any of its provisions

is clear to me beyond question. Manifestly it derives no such power from the Constitution of this State or from any agency of the Federal Government. On the contrary, such power is denied it by express provisions of the Constitution. The people of this State, and they alone, possess that power to the exclusion of all governmental instrumentalities of the State.

Article IV, Section 5 of the Constitution of this State provides that every person elected or appointed to any office, before proceeding to exercise the authority or to discharge the duties of such office shall make oath or affirmation that he will support the Constitution of the United States and the Constitution of this State, and that he will faithfully discharge the duties of the office to the best of his skill and judgment. Under that provision any vote or act of any officer of this State, including all its judges, which operates to invalidate the Constitution or any of its provisions is ineffective and of no force or effect.

That no judge or other officer of this State can act as such in any manner to invalidate or nullify, change or amend any provision of the Constitution of this State is manifest by Sections 1 and 2, Article XIV of the Constitution by which the people reserve to themselves the exclusive right and power to alter or amend the Constitution and provide the manner in which any alteration or amendment shall be made. Those methods, which are exclusive, are ratification by a majority vote of the people of this State, at an election for the purpose, of acts or ordinances of a Constitutional Convention created in the manner provided by the Constitution and submitted to the people, and ratification by a majority vote of the people of this State, at an election for the purpose, of any amendment proposed by the Legislature. The action of the majority in undertaking to invalidate the constitutional provisions here under consideration is contrary to and violative of the constitutional provisions to which I have referred, and all such action is null and void and of no force or effect for that reason alone.

That this Court is without authority to invalidate any provision of the Constitution of this State is also indicated by the historical record that no judge of this Court in any of the more than 13,000 cases that have been decided by it during the period of 106 years of its existence has ever voted or acted to invalidate

> any provision of the Constitution of this State; and until the present decision in this case none of the total number of fifty judges of this Court during its entire period of existence has ever engaged in or taken such action.

> To the contrary, this Court in its prior decisions has uniformly held that this Court does not have the power to amend, alter or repeal any provisions of the Constitution of this State and that the provisions of that Constitution are binding upon all departments of government of this State, all its citizens, and all persons whomsoever within its jurisdiction.

(Incidentally, I agreed with the dissenting Judge when that case was decided in the conference room. However, when the majority opinion was prepared, I reluctantly decided to go along in the hope that the Supreme Court of the United States would make a final adjudication of this question, and the case is at this moment pending in that Court. In retrospect I regret not having authorized the dissenting Judge to note that I, too, dissented and joined in the views expressed in his dissenting opinion.)

Inasmuch as the Court did not decide the question of whether the judgment was void for the reason that this indigent defendant was not furnished with counsel, I have refrained from citing authority herein upon that issue as I did in my dissent to the original holding of the Court prior to the rehearing. In my opinion, the majority should likewise have refrained from discussing that question and citing authority relative to it.

For the reasons hereinbefore stated, I would affirm the judgment of the Circuit Court of Monongalia County.

CALHOUN, JUDGE, dissenting:

Respectfully, I dissent for various reasons.

The accused in this case was convicted upon his plea of guilty. I would hold that the judgment entered by the justice of the peace is void for uncertainty. Upon this basis, I would

relieve Moats of the fine imposed by the justice; discharge him in relation to the sentence of imprisonment in the county jail; and, in these circumstances, I would not consider or decide either of the two constitutional questions urged in behalf of the petitioner in the habeas corpus proceeding. *State ex rel. Titus v. Hayes,* 150 W.Va. 151, pt. 5 syl., 144 S.E.2d 502. In the main, I agree with the views expressed by Judge Browning in his dissenting opinion.

Code, 1931, 17C-5-2(c), as amended, provides the penalty for the criminal offense involved in this case as follows: "* * * shall be punished by imprisonment in the county jail for a period of not less than twenty-four hours nor more than six months and, *in addition to such mandatory jail sentence,* such person *may be fined* not less than fifty nor more than one hundred dollars; and, in every case of conviction under this section, such convicted person's operator's or chauffeur's license shall be revoked for a period of six months." (Italics supplied.) Imprisonment for not less than twenty-four hours is mandatory. Imposition of a fine, in addition to the jail sentence, is discretionary.

The sentence imposed by the justice of the peace, as disclosed by his docket, was as follows: "The defendant is committed to the county jail for thirty days *in lieu* of fine and cost." (Italics supplied.) That sentence is unwarranted by law and is utterly unintelligible. The justice had the mandatory duty to impose a jail sentence, but no authority to impose a jail sentence of thirty days "in lieu of fine and cost."

How can it be determined what the justice designed or intended by the words, "in lieu of"? Does the quoted phrase mean that the defendant, had he not been an indigent person, might have been sentenced to confinement in the county jail merely for the minimum period of twenty-four hours? If the sentence was designed and intended to impose a greater jail sentence solely because the defendant was an indigent person and therefore unable to pay a fine of not less than fifty dollars and costs, then it follows that the justice indulged in a discrimination against the defendant because of his indigency. If this was the intent of the justice and if, as I believe, this is

the clear import of the sentence, this Court should have considered the effect of this judgment in the light of the decisions of the Supreme Court of the United States in the following cases: *Tate v. Short,* 401 U.S. 395 (decided March 2, 1971); *Williams v. Illinois,* 399 U.S. 235; *Morris· v. Schoonfield,* 399 U.S. 508.

As stated in the Court's opinion in this case, the justice, in his testimony, undertook to explain or to elaborate upon the sentence disclosed by his docket by the following statement: "I gave him a fine and costs of fifty dollars, or thirty days." Assuming that this testimony was proper in an effort to explain, bolster or validate the previous unintelligible, legally-unwarranted sentence, such testimony only serves to enhance the uncertainty, indefiniteness and the unintelligibility of the sentence. Whereas the sentence disclosed by the docket is stated alternatively by use of the words, "in lieu of", the sentence disclosed by the justice's testimony is stated disjunctively by use of the words, "or thirty days". I would hold that the sentence disclosed by the docket and the sentence disclosed by the testimony, whether considered together or separately, are unwarranted by law, unintelligible and void on the basis of indefiniteness and uncertainty.

Where a sentence is so lacking in definiteness and certainty that it is unintelligible, it is void, and one imprisoned pursuant to such a sentence may be discharged from such imprisonment by a proceeding in habeas corpus. *State ex rel. Wright v. Boles,* 150 W.Va. 381, 146 S.E.2d 524; *State ex rel. Nicholson v. Boles,* 148 W.Va. 229, 134 S.E.2d 576; 21 AM. JUR. 2d, *Criminal Law*, Section 534, page 516; 24 C.J.S., *Criminal Law,* Section 1581, page 553. "In the absence of a statute authorizing it, an alternative sentence cannot be imposed. As a general rule, the trial court is without power to impose an alternative sentence which at the same time is uncertain and which gives to accused the choice of imprisonment or fine; it is the duty of the court to determine whether one or the other or both shall be imposed. Ordinarily, a sentence directing the alternative punishment of fine or imprisonment is void for uncertainty." 24 C.J.S., *Criminal Law,* Section 1581, page 557.

However, I can conceive of no legal basis for the Court's decision that the conviction is void.

The question of the propriety or legality of the fee system is not presented for decision by the facts of this case. The accused entered a plea of guilty to the charge contained in the warrant; and, therefore, the justice of the peace was never faced with any possibility of temptation to convict the accused in order to earn additional compensation. I respectfully suggest that the Court's opinion, concurred in by three of the five members of the Court, laboriously sets up a straw man and thereafter, by reasoning which I regard as fallacious, proceeds solemnly to knock him down.

I am unable to perceive any legal basis upon which the Court was warranted in holding that the judgment of the justice is void rather than, at most, merely voidable because of the alleged fact that he had a pecuniary interest in the case. If the judgment is voidable but not void, it "can not be considered or corrected" in a habeas corpus proceeding. *State ex rel. Nicholson v. Boles,* 148 W.Va. 229, pt. 1 syl., 134 S.E.2d 576.

Justice of the peace courts, circuit courts and this Court were all created by Article VIII, Section 1 of the Constitution of West Virginia. Justice of the peace courts, therefore, have the same constitutional status as this Court. The jurisdiction of the justice to entertain and to try one on a criminal charge such as that involved in this case is conferred by Article VIII, Section 28 of the Constitution of West Virginia and by Code, 1931, 17C-19-9, as amended. It is undisputed that the justice in this case had jurisdiction of both the person and of the subject matter. It is not disputed that he was duly qualified to act as a justice of the peace.

The sole basis of the Court's decision that the judgment of the justice is void is based on the tenuous proposition that he had a financial interest in the case which, in this case, amounted to the possible receipt of a fee of fifty cents. This, at most, means that the justice was disqualified by "pecuniary interest" to act in the case. Prior to the decision of this case, it was

settled by prior decisions of this Court, in accord with a general or universal rule, that where a judicial officer is disqualified to act in a case merely by reason of his pecuniary interest, a judgment rendered by the judicial officer in the case is voidable but not void. Heretofore it has been made clear by decisions of this Court that such a disqualification is waived if objection to the disqualification is not raised before the entry of the judgment. These principles were clearly declared in a case substantially identical to the present case, involving disqualification of a justice in a criminal case arising from his pecuniary interest based on the fee system. *State v. Simmons,* 117 W.Va. 326, 185 S.E. 417. The decision in the *Simmons* case is diametrically opposed to the decision in the present case. The opinion in the *Simmons* case states clearly, forcefully and convincingly the views I entertain in relation to the decision in the present case. To the same effect, see *Butcher v. Kunst,* 65 W.Va. 384, pt. 9 syl., 64 S.E. 967; *City of Grafton v. Holt,* 58 W.Va. 182, 52 S.E. 21; *Forest Coal Co. v. Doolittle,* 54 W.Va. 210, 46 S.E. 238; *Findley v. Smith,* 42 W. Va. 299, 26 S.E. 370; 46 Am. Jur. 2d, *Judges,* Section 98, page 163 and Section 231, page 253; 48 C.J.S., *Judges,* Section 97 c(2), page 1109. The Court makes no reference in the syllabus to the legal principles so clearly stated in the five prior decisions of this Court listed immediately above.

In reference to *State v. Simmons, supra,* the Court, in the body of the opinion, makes this statement: "The statement in the opinion in that case, upon the authority of the civil case of *City of Grafton v. Holt,* 58 W.Va. 182, 52 S.E. 21, 6 Ann. Cas. 403, that 'The action of a judicial officer who was disqualified by personal interest is voidable, not void,' is expressly disapproved." The word "disapproved" is a word sometimes euphemistically used for the word "overruled." The *Simmons* case apparently has been overruled. Inasmuch as the Court referred to a single sentence appearing in the body of the opinion in the *Simmons* case, I deem it important here to quote the two points of the syllabus of that case to demonstrate the deliberateness and clarity which characterized the Court's decision in that case. The two syllabus points are as follows:

"1. The question of the alleged disqualification of a justice of the peace because of interest cannot be raised for the first time on appeal, where the disqualification, if arising under special circumstances, was known, or, if arising under general law, was presumed to be known.

"2. Where a justice of the peace took cognizance of a misdemeanor case, within his general jurisdiction, after the enactment of Code, 50-17-14 and 7-5-15 and before the repeal thereof, the question of the alleged disqualification of the justice to act in such · case, on the ground that the said statutes were unconstitutional because of the manner therein provided for payment of the fees of the justice, not having been raised until after judgment had been rendered by the justice and the case had passed beyond his control, must be deemed to have been waived."

The action of the Court in overruling the *Simmons* case necessarily results in the overruling of the *Butcher, City of Grafton, Forest Coal Co.* and *Findley* cases. If such additional cases have not been overruled, it necessarily follows that the Court in this case is applying one rule in relation to criminal cases and another and different rule in relation to civil cases. I am not aware of any legal basis for such a distinction. The Court in this case has cited no precedent for such a wholly unwarranted distinction. The result is that the law, as expressed in this Court's opinions, is left in a state of uncertainty in an area where certainty and clarity existed previously.

The majority opinion, as far as I can discern, does not cite a single case as a precedent for holding that the judgment of the justice in this case is void rather than voidable. *State ex rel. Osborne v. Chinn,* 146 W.Va. 610, 121 S.E.2d 610 and *Williams v. Brannen,* 116 W.Va. 1, 178 S.E. 67, both involved proceedings in prohibition in which justices of the peace were prohibited from proceeding in certain criminal cases because of their pecuniary interest in such cases arising from the fee system of compensation. They are consistent with this Court's prior decisions that a judgment rendered by a justice so disqualified is voidable rather than void and, therefore, cannot be attacked collaterally by a habeas corpus proceeding. *Doty v. Goodwin,* 246 Ark. 149, 437 S.W.2d 233, involved a case in

which the court prohibited a justice of the peace from trying a misdemeanor case because the justice could recover compensation in form of fees to be paid by the defendant only in the event of his conviction of the misdemeanor. *Tumey v. Ohio*, 273 U.S. 510, involved a conviction by a mayor of one charged with having committed a criminal offense. That case is distinguishable from the present case for at least three reasons. First, the mayor received no compensation for trying the case unless he convicted the accused. Upon conviction, the prisoner was required to pay the mayor the sum of $12 as his fees and costs. Second, the accused, at the outset and before the commencement of the trial, "moved for his dismissal because of the disqualification of the Mayor to try him, under the Fourteenth Amendment." Third, the accused entered a plea of not guilty. The Court's opinion (273 U.S. at page 535) contains the following statement: "He seasonably raised the objection and was entitled to halt the trial because of the disqualification of the judge, which existed both because of his direct pecuniary interest in the outcome, * * *."

With due deference but with utmost confidence, I assert that the Court in this case has cited no pertinent precedent whatsoever for declaring that the judgment of the justice was utterly void and, therefore, subject to attack in a collateral proceeding. On the contrary, the Court has disregarded well-established principles abundantly sustained by prior decisions of this Court, by declining to hold that the judgment was merely voidable and hence not subject to attack in a habeas corpus proceeding.

The opinion contains an extended discussion of the question of the right of the accused to have been furnished counsel at public expense in the justice of the peace court. All this discussion is pure dictum. From this discussion it should not be assumed by anyone that a majority of the members of this Court are of the opinion that the accused was denied any constitutional right in this respect. Possibly an evidence of the fact that a majority of the members of the Court did not entertain such an opinion may be gleaned from the fact that the question relating to the right to counsel was so extensively discussed but not decided.

As a consequence of this decision, justices of the peace cannot know whether they are afoot or horseback. As Judge Browning has stated, this has created problems throughout the state for all prosecuting attorneys, law enforcement officers and trial courts of record having jurisdiction in criminal cases. I do not assume to be able to furnish a certain solution to the problems thus created, but I do suggest that, by the Court's opinion in this case, the statutes which provide for the fees which cause the alleged disqualification of justices in criminal cases have been declared to be unconstitutional and, therefore, such fees are not collectible. These statutory provisions are clearly separable so that other related statutory provisions remain unimpaired and valid. *State ex rel. State Building Commission v. Bailey*, 151 W.Va. 79, 150 S.E.2d 449. In this respect, the decision in the present case has effectively removed the disqualification of justices of the peace in criminal cases so far as the fee system of compensation is concerned. This conclusion is strongly suggested in *Williams v. Brannen*, 116 W.Va. 1, 6, 178 S.E. 67, 69. The opinion in the present case also suggests that in any case, civil or criminal, a justice of the peace may remove his disqualification by waiving all fees, the right to which may depend upon the nature of his decision.

When I undertake to determine what has been accomplished by the Court's decision in this case, what contribution has been made to the sum total of effective administration of justice, I am by no means pleased because I believe we have freed an obviously guilty man and have needlessly created confusion and uncertainty to plague honest public officials throughout the state.