John H. Williams *v.* P. L. Brannen, *Justice of the Peace*

(No. 7989)

Submitted January 9, 1935.  Decided January 15, 1935.

*Melville Stewart* and *S. Grover Smith, Jr.,* for petitioner.
*Koontz, Hurlbutt & Revercomb, Brown, Jackson & Knight,*
*W. Elliott Nefflen* and *Herman Bennett,* for respondent.

HATCHER, JUDGE:

This is a proceeding in prohibition to restrain the respondent, a justice of the peace, from trying the petitioner on a charge of violating Code, 22-2-63. If found guilty, the petitioner would be subject to a fine of from ten to five hundred dollars. He takes the position that the justice would be pecuniarily interested in the result.

Under Code, 50-17-14, the fees of a justice in misdemeanor cases not paid "by the parties" shall be "charged and recovered" as provided in Code, 7-5-15, the pertinent part of which follows:

> "The sheriff shall enter all fines paid to him by justices, under the names of the justices making the payments, respectively, to the credit of an account to be kept by him under the heading 'general school fund.' All claims by justices and constables for fees due them in misdemeanor proceedings in the county where the accused is acquitted, or when such fees could not be collected on executions or fee bills, by the exercise of proper diligence, shall be audited and examined by the county court, and if found correct, and if submitted as provided in section fourteen, article seventeen, chapter fifty of this Code, the county court shall cause orders to be issued therefor on the sheriff to be paid out of that part of such fund to the credit of the particular justice before whom such fee bill arose, if sufficient, and charged to such account, but neither the county nor the general school fund shall be liable for the fees or costs of any justice in such cases beyond the balance in the hands of the sheriff from fines paid by that justice."

The effect of these provisions is that a justice has only two sources of compensation in misdemeanor cases—costs paid by

the accused when convicted, and the fund accumulated in the hands of the sheriff from fines assessed by the justice. It is obvious that a justice must convict in an appreciable number of such cases where fines and costs are collected in order to secure payment of his fees in those cases wherein he collects no costs.

Petitioner's trial was set for June 16, 1934. Prior to that date, respondent had deposited with the sheriff since the present statute became effective (January 1, 1931), the sum of $3,574.87 from fines collected. The respondent and his constables had been paid from that fund on account of uncollected fee bills in misdemeanor cases tried before him, the sum of $3,573.65, leaving a balance in the fund of $1.22. He had on file with the county court at that time unpaid fee bills amounting to $256.00. Counsel for petitioner resolve the situation as follows: "If the petitioner were acquitted, the amount of unpaid fee bills would be increased; if he were convicted, the fine imposed, if collected, would go to decrease the bills lodged with the court, and incidentally would go into the pocket of the justice, at least to the extent of the unpaid fee bills. * * * It is submitted that it would have been to the respondent's interest to have reached a conclusion against this petitioner, and much against his interest to have acquitted him." We are of opinion that counsel's position is sound and that respondent had a direct and a material pecuniary interest in convicting the petitioner.

The common law of England (to which we are committed by our Constitution) has a hoary maxim *"Nemo debit esse judex in propria causa"* which Broom, Legal Maxims (9th Ed.) 81, translates "No man can be judge in his own case." The maxim applies to a case in which the judicial officer is interested, as well as to one in which he is a party. Cooley, Const. Limitations (8th Ed.), p. 870-1. A leading case illustrating the inflexibility of the maxim is *Dimes* v. *Gr. Junc. Canal,* 111 H. L. C. 759, 793, (decided in 1854) which held that a decree even by the Lord Chancellor of England in a case where he had an insignificant interest "was not according to law" and should be set aside. Chief Justice Lord Campbell said, "No one can suppose that Lord Cottenham (the Lord

Chancellor) could be, in the remotest degree, influenced by the interest that he had in this concern (the Canal company) ; but, it is of the last importance that the maxim that no man is to be a judge in his own cause, should be held sacred. And that is not to be confined to a cause in which he is a party, but applies to a cause in which he has an interest.'' The attitude of the common law against entrusting the scales of justice to an interested tribunal is well reflected in the philosophy of Burns:

> "If self the wav'ring balance shake,
> It's rarely right adjusted.''

The Supreme Court of the United States in *Tumey* v. *Ohio,* 273 U. S. 510, 524-5, 47 S. Ct. 437, 71 L. Ed. 749, noted ''the greatest sensitiveness'' at common law concerning the existence of any pecuniary interest (''however small or infinitesimal'') of any judicial officer ''in the resolving of the subject matter which he was to decide.'' The maxim was specifically recognized by this Court in *Findley* v. *Smith,* 42 W. Va. 299, 305, 26 S. E. 370, and in *Grafton* v. *Holt,* 58 W. Va. 182, 187, 52 S. E. 21. In the *Findley* case the court said the maxim was ''a fundamental rule'' and that it ''must be held sacred.'' In the *Grafton* case the court said, ''Suitors are entitled to a fair and impartial judgment upon the matters in litigation, and to have that judgment pronounced by a fair and impartial tribunal. Otherwise courts of justice are but mockeries and their judgments are without credit or respect. The maxim of the common law *'Nemo debit esse judex in propria causa,'* remains inviolate in this state.'' The *Grafton* case was decided in 1905, but the maxim is just as firmly embedded in the jurisprudence of the state now as then.

*Tumey* v. *Ohio, supra,* is a case in which the maxim was applied against the mayor of a village who received compensation for his service in a criminal case only upon a conviction. Counsel for respondent list eight points of difference between the facts in the *Tumey* and the instant case. We feel that the differences are not consequential in view of the following pronouncement in the *Tumey* case: ''Every procedure which would offer a possible temptation to the average man as a

judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the State and the accused, denies the latter due process of law.'' We concur in that pronouncement and are of opinion that due process of law requires that a magistrate's compensation must not depend upon a fund created by his own convictions.

Counsel would correlate the instant case with that of *Dugan* v. *Ohio,* 277 U. S. 61, 48 S. Ct. 439, 72 L. Ed. 784, where it was held that the mayor of Xenia was not disqualified to try the accused. The following sentence in the *Dugan* opinion differentiates that case from this: ''While it is true that his (the mayor's) salary is paid out of a fund to which fines accumulated from his court under all laws contribute, it is a general fund, and he receives his salary in any event, whether he convicts or acquits.'' Counsel would associate the instant case with *Jelly* v. *Dills,* 27 W. Va. 267, and *Brown* v. *Epps,* 91 Va. 726, 21 S. E. 119. But both of those cases deal solely with the right of an accused to a jury trial in an inferior court, and are not applicable here.

Counsel would avoid the maxim on the grounds that the accused may have a jury instead of the magistrate to try him, and that the accused has the unrestricted right of appeal. Both of those grounds are unsubstantial. ''Trial by jury,'' in the constitutional sense, requires such a trial to be under the superintendence of a disinterested judge. *Traction Co.* v. *Hof,* 174 U. S. 1, 13-14, 19 S. Ct. 580, 43 L. Ed. 873. It is ordinarily cheaper to pay a moderate fine than to pay the expenses attendant upon an appeal. For which reason many an innocent man has submitted to an unjust decision in an inferior court. Right of appeal does not meet the situation. The Constitution requires that the accused shall be tried before a fair and impartial tribunal in the first instance where he will not face the alternative of paying an unjust fine or of resorting to the delay, annoyance and expense of an appeal.

A judge or magistrate is without authority to try a case in which he is disqualified. Therefore prohibition is the proper procedure to restrain him. *Coal Co.* v. *Doolittle,* 54 W. Va. 210, 46 S. E. 238; *Price* v. *Sturgiss,* 82 W. Va. 523, 97 S. E.

193; Works on Courts and their Jurisdiction, 638; 16 Ency. Pl. and Pr., subject Prohibition, 1124; 22 R. C. L., *idem*, 21; 50 C. J., *idem*, 670. When prohibition is a proper remedy it lies "as a matter of right." Code, 53-1-1.

We are of opinion that the present statutory system of compensating justices is unconstitutional, depriving the respondent of authority to try the petitioner. Counsel suggest that if we so find, then the system of compensating justices in effect prior to 1931 would be restored. This cannot be, because Code 1931, 63-1-1, repealed "all acts and parts of acts of a general nature in force" prior to January 1, 1931, subject to a few exceptions, none of which include the compensation of justices. Moreover, the former system contained the elements of unconstitutionality only in a lesser degree than the present system.

Counsel also make the following contention: "If the justice's alleged interest denies due process of law, then the statutes conferring that interest are unconstitutional. When those statutes are voided, the justice has no possible interest in the result. There can be no question that the justice should try petitioner and that the writ should not issue." This contention might appeal to us were it not for the fact that the present system was in effect at the time the warrant for petitioner was issued. The prospect of the fees arising from his arrest may have influenced the issuance of the warrant. The stream from the fountain of justice should be pure at its very source. Wherefore, we are minded to award the writ.

*Write awarded.*