STATE OF WEST VIRGINIA *ex rel.* ROBERT OSBORNE

*v.*

H. H. CHINN, JUSTICE OF THE PEACE FOR KANAWHA COUNTY, WEST VIRGINIA, AND KENNETH W. PAULEY AND RAYMOND D. ROBERTS

(No. 12125)

Submitted September 6, 1961.  Decided September 26, 1961.

Calhoun, Judge, concurring.

*H. D. Rollins,* for relator.

*C. Donald Robertson,* Attorney General, *Andrew J. Goodwin,* Assistant Attorney General, *Charles M. Walker,* Prosecuting Attorney, Kanawha County, for respondents.

Berry, Judge:

This is a proceeding in prohibition under the original jurisdiction of this Court to restrain the respondent, H. H. Chinn, a Justice of the Peace for Kanawha County, from trying the petitioner on a charge of cruelty to animals, in violation of Code, 61-8-19. If the petitioner were tried and found guilty, he would

be subject to a fine of not less than five nor more than one hundred dollars, and at the discretion of the justice, may be imprisoned in the county jail for a period not exceeding six months.

It is the contention of the petitioner that the respondent, H. H. Chinn, a Justice of the Peace for Kanawha County, is disqualified from hearing the case on the theory that he is pecuniarily interested in the disposition of the case.

Under the provisions of Chapter 71, Acts of the Legislature, Regular Session, 1961, the method of paying justices of the peace for Kanawha County was changed, wherein said Act amended Chapter 50, Code of West Virginia, by adding a new article designated as Article 19. This Act provided that justices of the peace be paid a salary in lieu of fees as heretofore provided by law, and that the provisions of the Act should apply only to counties having a population in excess of 200,000. Kanawha County, being the only county in the state having a population in excess of 200,000, is the only county affected by the provisions of said Act. However, the Act would also apply to any other county in the state upon its obtaining a population of more than 200,000.

The salaries paid to the justices of the peace for Kanawha County range from $2400.00 to $8010.00 yearly, based upon the population of the magisterial districts thereof. All fines, fees, costs and other moneys in both criminal and civil cases received or obtained as a result of a trial in a justice court in Kanawha County are turned over to the Circuit Clerk of Kanawha County, and in turn remitted by him to the general county fund and credited to an account in said general county fund known as the justices' fund. The cost of administration of this system and the annual salaries of the justices are paid out of this account.

Section 1, Article 19, Chapter 71, Acts of the Legislature, Regular Session, 1961, provides that "The salaries of justices of the peace shall be payable solely

out of the justices' account in the county general fund * * * ". Section 7, Article 19, Chapter 71, Acts of the Legislature, Regular Session, 1961, provides that "All other moneys remaining in the county justices' account at the end of the fiscal year, shall become a part of the regular county general fund."

It is obvious that under the provisions of the Act, the justices of the peace for Kanawha County can only be paid the salaries provided for in the Act, from fines and costs obtained from cases tried by them, and, if there are insufficient funds in this special justices' account within the general county fund with which to pay their salaries, there is no provision for the payment thereof.

If the justices were not paid their full salaries under the provisions of this Act, it might create a tendency for the justices to find an accused guilty in order to obtain a fine to be placed in the fund, without giving the proper weight to the burden of proof in finding individuals who may be tried before said justices guilty beyond all reasonable doubt. Then too, there is a discretion in the amount to be assessed as a fine in most cases, such as the one involved in this proceeding, and, because of the provisions of the Act aforesaid, it may create a tendency to assess higher fines in order to have sufficient funds in the special justices' account with which to pay the full salaries of all justices of the peace in Kanawha County.

Should any balance remain in the special justices' account at the end of the fiscal year, it becomes a part of the regular county fund automatically, and the special justices' account is left without any funds whatsoever at such time. It would, therefore, start without sufficient funds or insolvent at the beginning of each fiscal year. This may create another tendency to obtain more and larger fines in the trial of a case in order to build up the fund or account.

The disposition of this case does not require a ruling as to the proper disposition of fines provided for in

the Act, because it was not raised in the pleadings, briefs or arguments of counsel—but see Article 12, Section 5 of the Constitution of West Virginia, and *State v. Parkins,* 63 W. Va. 385, 61 S. E. 337.

It has been held that where a justice of the peace has any pecuniary interest in any case to be tried by him, however remote, he is disqualified to try such case. *Findley v. Smith et al.,* 42 W. Va. 299, 26 S. E. 370; *City of Grafton v. Holt, Judge &c., et al.,* 58 W. Va. 182, 52 S. E. 21.

The Supreme Court of the United States held in the case of *Tumey v. Ohio,* 273 U.S. 510, 532, 47 S. Ct. 437, 71 L. Ed. 749, 50 A.L.R. 1243, that: "Every procedure which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the State and the accused, denies the latter due process of law."

This Court has already passed on a situation quite similar to the case at bar in the case of *Williams v. Brannen,* 116 W. Va. 1, 178 S. E. 67, wherein an act of the legislature provided that fees of a justice of the peace in misdemeanor cases not paid by the parties be recovered from fines from cases paid by the justice to the sheriff. These fines were kept in an account under the heading of general school fund, said account being entered under the names of the individual justices making the payments. The individual justice could then make a claim for payment from this fund for all claims for fees due on misdemeanor proceedings tried by him where the accused was acquitted, or where such fees could not be collected on an execution or fee bill, but neither the county nor general school fund was liable for fees or costs of any justice in excess of the funds in the hands of the sheriff from fines paid by each justice. A justice had only two sources of compensation in misdemeanor cases, under the provision of the act: from costs paid by the ac-

cused at the time of his conviction, and from the funds in the hands of the sheriff accumulated from fines assessed by the justice. It was necessary that a justice convict in an appreciable number of such cases where fines and costs could be collected in order to secure payment in cases where no costs were collected. It was held in that case that the act in question was unconstitutional for the reason that "* * * due process of law requires that a magistrate's compensation must not depend upon a fund created by his own convictions."

It was also held in the *Williams* case that prohibition is the proper procedure to restrain a judge or magistrate from trying a case in which he is disqualified.

The common law principle which remains today in full force and effect in this state that no man can be judge of his own case applies as well to a case in which a judge or magistrate is interested as to one in which he is a party. *Williams v. Brannen, supra.*

The act involved in the *Williams* case applied to each justice individually. In the same manner the act in the case at bar applies to the justices in Kanawha County collectively. In the *Williams* case it would only be necessary for the individual justice to build up the fund for himself, but in the case at bar not only would the individual justice build up a fund for the payment of his individual salary, but he would also build up a fund from fines and costs to pay the salaries of the other justices. If the statute in the *Williams* case was unconstitutional, and it was so held by this Court, certainly there is more reason to hold the statute in the case at bar unconstitutional for multiplicity of the same acts done by the individual justice in the *Williams* case.

We are of the opinion that the act in question in the case at bar, Chapter 71, Acts of the Legislature, Regular session, 1961, which is Chapter 50, Article 19 of the West Virginia Code, as amended, violates the due process clauses of both the State and Federal Constitu-

tions, Article 3, Section 10, State of West Virginia, and Section 1 of the Fourteenth Amendment of the Constitution of the United States.

For the reasons stated herein, the writ prayed for is awarded.

*Writ awarded.*

CALHOUN, JUDGE, concurring:

I concur fully in the decision embodied in the Court's opinion in this case. At the time the case was decided, I felt that the legislative enactment in question was clearly unconstitutional for at least one reason not urged by briefs or oral argument of counsel. Since only the single basis of unconstitutionality was urged and discussed by counsel, it was deemed that a concurring opinion raising at least one additional constitutional question might be advisable or helpful. The Court's opinion as written makes a passing reference to the additional constitutional question which makes the most forceful appeal to me; and, therefore, this concurring opinion may thereby have been rendered somewhat superfluous to that extent. Nevertheless, since further legislation in this area possibly may be undertaken, I file this concurring opinion of a cautionary nature.

Section 5 of Article XII of the Constitution of West Virginia provides in part: "The Legislature *shall* provide for the support of free schools by appropriating thereto * * * the *net proceeds of all forfeitures and fines* accruing to this State under the laws thereof; * * *." (Italics supplied.) The case of *State v. Parkins,* 63 W. Va. 385, 61 S. E. 337, involved a statute which provided that game wardens should receive as compensation for their services all fines assessed against persons arrested by them, respectively, for wild game and fish law violations. In holding that such statute was violative of the constitutional provision quoted above, the Court stated: "The Constitution commands that these fines go to the free schools; the act is directly to the reverse, diverting

them from the free schools and giving them *entire* to the deputy fish wardens—a glaring conflict. * * * A different conclusion might cripple the schools."

The statute involved in this case provides that all fines assessed by justices of the peace shall be assembled in a designated fund or account. It provides further that various items for salary, including a salary of $3,000 to the clerk of the circuit court, rental, stationery, and other expenses shall be paid therefrom in a manner and to an extent not heretofore authorized by law; and finally the act provides that the balance, if any, remaining in such account or fund at the end of any fiscal year "shall become a part of the regular county general fund." All fines levied by justices of the peace in Kanawha County would, by the terms of the act, be wholly diverted from the support of public schools. The act in this respect is, in my judgment, clearly violative of the constitutional provision quoted above.

I question the constitutionality of another provision of the act. The courts of justices of the peace were created by the Constitution, as were circuit courts and this Court. *Harbert v. County Court of Harrison County,* 129 W. Va. 54, 56-57, 39 S. E. 2d 177, 182. Section 27 of Article VIII of the Constitution of West Virginia provides that justices of the peace "shall be elected" on a district basis. The Constitution, so far as I know, makes no other provision for their selection, except that Section 30 of Article VIII provides in part: *"Vacancies in the office* of commissioner, clerk of the county court and *justices of the peace,* shall *be filled by the county court of the county* until the next general election." (Italics supplied.) In the very recent case of *State ex rel. G. Y. Neal, etc. v. W. W. Barron, Governor, etc.,* 146 W. Va. 602, 120 S. E. 2d 702, this Court reaffirmed its view that the provisions of the section of the Constitution quoted immediately above are mandatory, and that vacancies in the offices therein specified may not be filled in

any manner other than by the county court. Section 5 of the act now in question is as follows:

> "Sec. 5. *Appointment of Special Justice; Powers and Duties; Oath; Compensation; Bond.*—The judge of any court of record exercising appellate jurisdiction from a justice court, either civil or criminal, or both, may, in the absence, sickness, or inability of a justice to act, appoint a special justice to sit during the absence, sickness or inability to act of the regular justice, who shall have all the powers and duties of the regular justice, but before assuming such powers and duties, he shall take the oath prescribed by the West Virginia constitution for public officials. A special justice shall be paid out of the justices' account of the county general fund, the salary of the regular justice based upon the number of days he serves during the month as a special justice. Any special justice so appointed shall before he acts as said special judge be bonded in the same manner and in the same amount as a regularly elected justice."

The Constitution seems to me to contemplate that justices of the peace shall be ''elected''; that they shall act personally; that no other person may act in their stead; that there is no legal authorization for an office of ''special justice''; and that if the office of justice of the peace becomes vacant from any cause, only the county court may fill the vacancy.

Assuming that the legislature is authorized to create the office of ''special justice'' and to clothe one holding such office with ''all the powers and duties of the regular justice'', during the absence, sickness or inability of the duly constituted justice to act, we are brought face to face with Section 40 of Article VI of the Constitution which is as follows: ''The Legislature shall not confer upon any court, or judge, the power of appointment to office, further than the same is herein provided for.'' In the case of *Poling v. County Court of Barbour County*, 116 W. Va. 580, 182 S. E. 778, this Court held unconstitutional an act of the legislature which undertook to confer on the judge of a circuit court the power to fill by appointment a vacancy in the office of prosecuting attorney. For the reasons

stated, I feel that Section 5 of the statute in question is manifestly unconstitutional.