STATE *ex rel.* CHARLES REECE *and* SALLY REECE, *his Wife*

*v.*

JOE GIES, *Justice of the Peace, etc., and*
CHARLESTON HOUSING AUTHORITY

(No. 13332)

Submitted May 1, 1973.          Decided June 5, 1973.

Concurring Opinions July 31, 1973 and August 2, 1973.

*George R. Higinbotham,* for relators.

No appearance by respondents.

BERRY, PRESIDENT:

The relators, Charles and Sally Reece, filed a petition with exhibits attached thereto for a writ of prohibition in this Court on February 6, 1973 praying that the respondents, Joe Gies, Justice of the Peace, District II, Kanawha County, and the Charleston Housing Authority,

be prohibited from proceeding to evict the relators from their home pursuant to a judgment for unlawful entry and detainer. A rule was issued February 19, 1973 returnable May 1, 1973 at which time the case was submitted for decision. The respondents did not file an answer and respondent Joe Gies did not appear on May 1 during the oral argument. Briefs were submitted by the relators and the Attorney General of West Virginia, who appeared on behalf of the respondents, citing Code, 55-13-11, as amended, as authority therefor, without objection by the relators.

The relators were residents of Orchard Manor which is a federally funded low income housing project in Charleston, West Virginia. The relators occupied a four bedroom apartment at a monthly rental of $86. On December 19, 1972 the relators received written notification from the Charleston Housing Authority that as a result of their chronic non-payment of rent and the fact that the relators were keeping pets in their apartment in violation of their lease, the Housing Authority would be forced to sue for possession of the relators' apartment.

On January 9, 1973 the respondent Charleston Housing Authority filed an unlawful entry and detainer complaint with the respondent Joe Gies, Justice of the Peace. At the subsequent trial before the justice of the peace, judgment in the amount of $300 was awarded to the Charleston Housing Authority.

The relators timely filed a motion to appeal and sought to proceed in forma pauperis because the relators were unable to post the bond required by Code, 50-15-2, which requires that bond be posted in an amount double that of the judgment ($600) plus one year's rent ($1,032) or a bond in the total amount of $1632. As a result of their failure to post bond, the justice of the peace refused to allow the relators to file their appeal.

The relators contend that the justice of the peace system in West Virginia has inherent deficiencies which have the effect of preventing a fair and impartial trial. They

contend that the respondent Gies was a layman and had no formal legal training and hence was unable to understand the legal argument of their counsel. The relators contend that they, as indigents, were denied due process of law and equal protection of the law by the provision of Code, 50-15-2, which requires that they post an appeal bond in an amount double that of the amount of the judgment against them and an amount sufficient to cover one year's rent of the premises.

The relators also contend that the justice of the peace had a financial interest in the outcome of the case in that the justice would be entitled to a fee of $2.50 for his services in connection with an execution on a judgment, and he would also be entitled to $.35 for mailing each suggestee execution by registered and/or certified mail.

No answer was filed on behalf of the respondent and the attorney general appeared and filed a brief citing as authority therefor the provisions of Code, 55-13-11, as amended, without objection by the relators, although the authority cited by the attorney general for such action would not appear to be applicable to the instant case.

The grounds upon which the relators rely for the awarding of the writ of prohibition are: (1) That the summons served upon the relators violated due process of law in that it did not sufficiently apprise them of the underlying claim; (2) that the justice of the peace who tried the case is a layman not trained in the law and therefore was unable to understand the legal argument of counsel for the relators, thus preventing a fair and impartial trial; (3) that the relators as indigents were denied due process and equal protection of the law by the provision of Code, 50-15-2, requiring that an appeal bond be posted in an amount double that of the judgment against them and an amount sufficient to cover one year's rent of the premises before an appeal can be granted; and, (4) that the justice of the peace had a financial interest in the outcome of the case in that he was entitled to a fee of $'.50 for the issuance of an execution on a judgment

rendered in favor of the plaintiff respondent and was also entitled to an additional $.35 for mailing the suggestee execution by registered or certified mail.

There is no merit in the first contention of the relators that the summons did not sufficiently apprise them of the claim. The summons, a copy of which was attached to the relators' petition as an exhibit, informs the relators that the action by the respondent Housing Authority was for the unlawful withholding of the premises which were specifically described in detail, and therefore fulfills all requirements of due process of law in this instance.

The second contention that the relators were denied due process of law because the justice of the peace had no formal legal training and was unable to understand the legal arguments of counsel for the relators is not well taken. It has been specifically held by this Court that this contention is without merit because of the constitutional provisions for such courts under the provisions of Article VIII of the Constitution of West Virginia. *State ex rel. Moats v. Janco,* 154 W.Va. 887, 180 S.E.2d 74.

It was held in the *Moats* case that:

"The Constitution prescribes no qualification for a justice of the peace except the requirement of Article VIII, Section 27, that he must reside in the district for which he was elected and the requirement of Article IV, Section 4, that he must be a citizen entitled to vote; and there are no additional qualifications prescribed for a justice of the peace such as legal training or the status of a duly licensed attorney at law as contended by the petitioner.

\* \* \*

"In view of the foregoing this Court holds that a duly elected justice of the peace who resides in the district for which he was elected is authorized and empowered to exercise within the county in which such district is located the jurisdiction conferred upon him by the Constitution and the statutes of this State; and his lack of professional legal training and his inability

> to attain the status of a duly licensed attorney at law do not of themselves render his judgment of conviction of a defendant of a criminal offense of which the justice has jurisdiction violative of the due process clauses of the Federal and State Constitutions."

These statements are equally applicable in civil cases where a justice of the peace is given jurisdiction by statute, in accordance with Article VIII, Section 28 of the Constitution of West Virginia. Code, 50-2-1 (b) gives a justice of the peace civil jurisdiction "Of actions of unlawful entry or detainer of real estate situated within his county as provided in article eleven [50-11-1 et seq.] of this chapter;".

The third contention of the relators is that they are indigents and that by virtue thereof were denied due process and equal protection of law by the provision of Code, 50-15-2 requiring them to post an appeal bond in an amount double that of the judgment against them and an amount sufficient to cover one year's rent of the premises.

The Supreme Court of the United States has held that due process does not require a state to provide an appellate system. *McKane v. Durston,* 153 U.S. 684, 14 S. Ct. 913, 38 L. Ed. 867; *Lindsey v. Normet,* 405 U.S. 56, 92 S. Ct. 862, 31 L. Ed. 2d 36; *Ortwein v. Schwab,* 410 U.S. 656, 93 S. Ct. 1172, 35 L. Ed. 2d 572. It was held in the *Ortwein* case that a statute requiring a filing fee to be paid by indigents seeking to appeal an adverse welfare decision did not violate the due process or equal protection clause of the Fourteenth Amendment. In the case of *Lindsey v. Normet, supra,* the Supreme Court of the United States held that an Oregon statute requiring a tenant to post bond on appeal from an adverse decision in an amount twice the rent expected to accrue pending the appellate decision and providing that if the landlord prevailed the landlord was entitled to collect the entire amount of the bond was a denial of the equal protection clauses of the Federal Constitution because there was no reasonable relationship between the bond requirement and the actual

rent accrued and damages sustained by the landlord. However, the Court stated in that case: "We see no constitutional barrier to Oregon's insistence that the tenant provide for accruing rent pending judicial settlement of his disputes with the lessor." The Court in that case also stated: " * * * a State may properly take steps to insure that an appellant post adequate security before an appeal to preserve the property at issue, to guard a damage award already made, or to insure a landlord against loss of rent if the tenant remains in possession, * * * ."

The double bond in the case at bar could never be more than $600 because the limit of the jurisdiction in a civil action before a justice of the peace is $300. If the appellant does not prevail the bond merely covers the judgment, interest and costs. The bond for the amount of the year's rent is to cover accrued rent while the tenant remains in the landlord's premises during the pendency of the appeal, and only the actual damages and cost, and actual rent owed during that time could be recovered under the bond. Both bond requirements bear a reasonable relation to the amount subject to be recovered under the bond. If the tenant were allowed to remain in the premises without paying rent or giving a bond to secure the payment of the damages and rent during the pendency of the appeal, a tenant could remain in the premises rent free during an appeal which could last, in some cases, for more than a year and result in the landlord being deprived of his property without due process of law.

It was held by a three judge federal court in the case of *Patterson v. Warner,* 371 F. Supp. 1362 (S.D. W.Va. 1972), that the bond requirement by West Virginia Code, 50-15-2, in an amount double that of the judgment in a justice of the peace court did not violate the equal protection clause of the Fourteenth Amendment to the Constitution of the United States, although the *Patterson* case did not involve an unlawful detainer action. In the recent case of *Greer v. Dillard,* . . Va. . ..., 193 S.E.2d 668,

the Supreme Court of Appeals of Virginia held that an indigent was required to post a $600 bond in order to appeal a case from a court not of record to a court of record, and the right to appeal was contingent upon satisfying the statutory requirements in connection therewith. It should be noted that the giving of the bond under Code, 50-15-2, in an amount double that of the judgment against the tenant and for one year's rent stays the execution on such judgment and allows the tenant to stay in the premises during the pendency of the appeal with the bond as security for the rent accrued if the landlord prevails. However, this statute, Code, 50-15-2, also provides that if the tenant does not wish to give a bond in order to stay an execution on such judgment he is only required to give security for the costs of such appeal. We therefore hold that the requirements for appeal bond contained in Code, 50-15-2, do not violate the equal protection clauses of the Federal and State Constitutions.

The fourth contention that the justice of the peace has a financial interest in the outcome of the case in that he is entitled to a fee of $2.50 for the issuance of an execution, which is only issued where judgment is rendered in favor of the plaintiff, is well taken. This was fully discussed in the relators' brief and argument without objection or response by either counsel for the respondent Housing Authority or the attorney general, both of whom appeared at the hearing. See *Cook v. Collins*, 131 W.Va. 475, 48 S.E.2d 161. This raises a serious question with regard to the fee system used by the justices of the peace in this state in connection with civil and criminal trials. It has been under attack in many cases in this state and this Court has held that where a justice of the peace has any pecuniary interest in the decision of any case he is disqualified from trying such case. *State ex rel. Moats v. Janco*, 154 W.Va. 887, 180 S.E.2d 74; *State ex rel. Osborne v. Chinn*, 146 W.Va. 610, 121 S.E.2d 610; *Williams v. Brannen*, 116 W.Va. 1, 178 S.E. 67.

Code, 50-17-1, as amended, provides for the fees to be charged by the justices of the peace in civil cases, and reads as follows:

> "(1) For entering and trying any civil suit and the issuance of all papers including distress warrant and attachment orders and the performance of all other services in connection with any such civil suit whether the suit be contested or uncontested and whether or not the suit be completed or discontinued but excepting services in connection with executions or garnishments and suggestee executions ........................................ $5.00
>
> "(2) For all services in connection with an execution or judgment, suggestion on judgment, execution and garnishment whether execution be without garnishment or there be both execution and garnishment or suggestee execution ......... $2.50
>
> &ast; &ast; &ast;
>
> "(9) For mailing each suggestee execution by registered and/or certified mail and return receipt requested ........................... . ............. .35"

It will be noted that the justice of the peace gets an initial fee of $5 in a civil case which is to be paid by the plaintiff. If the justice of the peace finds in favor of the plaintiff he gets an additional fee of $2.50 for issuing an execution on the judgment in order to satisfy it for the plaintiff. He also gets a fee of $.35 for mailing each suggestee execution by registered or certified mail. These additional fees are obtained only if judgment is rendered for the plaintiff. It therefore clearly appears that a justice of the peace has a financial interest in finding a judgment for the plaintiff. The United States Supreme Court held in *Tumey v. Ohio*, 273 U.S. 510, 47 S. Ct. 437, 71 L. Ed. 749, that: "But it certainly violates the 14th Amendment and deprives a defendant in a criminal case of due process of law to subject his liberty or property to the judgment of a court, the judge of which has a direct, personal, substantial pecuniary interest in reaching a conclusion against him in his case." The same principle applies to civil cases as well as criminal cases.

In the case of *State ex rel. Osborne v. Chinn, supra,* this Court held in the first point of the syllabus that:

"Where a justice of the peace has any pecuniary interest in any case to be tried by him, however remote, he is disqualified from trying such case."

In the case of *State ex rel. Moats v. Janco, supra,* it was held that where a justice of the peace received a fee for $.50 for certifying a transcript of the defendant's conviction in a drunk driving case to the Department of Motor Vehicles, and a fee of $2 for an appeal bond to which he was entitled only in the event of the conviction of the accused, this resulted in a pecuniary interest of the justice of the peace and violated the due process clause of the Fourteenth Amendment to the Constitution of the United States and Article III, Section 10 of the Constitution of this State, and that where such fee was not waived the judgment of conviction was null and void. In the case of *Ward v. Village of Monroeville, Ohio,* 409 U.S. 57, 93 S. Ct. 80, 34 L. Ed. 2d 267, the Supreme Court of the United States held that where the mayor of the town before whom the petitioner was compelled to stand trial for traffic offenses was responsible for the town's finances and the fines, forfeitures, costs and fees obtained through trials held by the mayor provided a substantial portion of the town's funds, the petitioner was denied a trial by an impartial judge in violation of the due process clause of the United States Constitution. It was also held that the petitioner was entitled to a neutral and unbiased judge in the first instance and it was irrelevant that the defendant could be tried de novo on appeal by an impartial judge when his constitutional rights were violated in an initial trial. See *Williams v. Brannen, supra.*

It is clear that the justice of the peace in the trial of this civil action had a pecuniary interest in receiving an additional fee of $2.50 if he found a judgment against the relators and by virtue of this fact and the decided cases relative thereto this constituted a violation of the due process clauses of the Federal and State Constitutions.

The justice of the peace, having a pecuniary interest in the trial of the case, was disqualified from trying such case, and the judgment entered by the justice of the peace is void. *State ex rel. Moats v. Janco, supra.*

The writ prayed for is granted.

*Writ granted.*

SPROUSE, JUSTICE, concurring:

I respectfully concur with the results of the well-written opinion of the majority. I would reach this conclusion not only on the basis of the rule announced in syllabus points 4 and 5, but for the additional reason that the bonding scheme provided by our statute for an appeal from a justice of the peace judgment for unlawful entry and detainer violates the equal protection clause of the Fourteenth Amendment of the United States Constitution.

The Supreme Court of the United States in *Lindsey v. Normet,* 405 U.S. 56, struck down a similar bond requirement of the State of Oregon. The Oregon statute dealt with bonds required on appeal from a judgment on a forceable entry and wrongful detainer action similar to the West Virginia statute. It is true as indicated in the majority opinion that the formula and amount required for an appeal bond under the Oregon law were different from those contained in the West Virginia statute. There is likewise no disagreement with the majority's interpretation of the rule in *Lindsey v. Normet, supra.* That statute was held not to afford equal protection to unlawful detainer appellants because there was no reasonable relationship between the bond and the plaintiff's damage or the rent to accrue during the appellate process.

The majority decision finds a reasonable relationship between the bond required by the West Virginia statute (Code, 1931, 50-15-2) and plaintiff's damage and the rent to accrue during the appellate process. I disagree with that conclusion. The application of the statute to the present defendants, the relators in this proceeding,

demonstrates its basic inequities and lack of constitutional fairness. The defendant Charles Reece is the father of six children residing with him and his wife at their Charleston Housing Authority apartment. Reece is normally employed but due to temporary unemployment was in arrears in the payment of rent. The rent was in the amount of $86.00 a month which was subject to being reduced by the Charleston Housing Authority in the event of unemployment. Reece claimed he owed $234.00 in back rent. The Charleston Housing Authority obtained a judgment for $300.00. In order to appeal, the defendants were required to post a bond in an amount double the judgment plus one year's rent at the rate of $86.00 per month—$600.00 plus $1,032.00, for a total of $1,632.00.

As these facts demonstrate, the bond requirement does not bear a reasonable relationship to the plaintiff's damage and security for rent during the appellate proceedings. Therefore, I believe it is violative of the rule established by the Supreme Court in *Lindsey*. This is not to say that landlords should not be protected in their right to rent enforcement—they should be. The bond requirement statute, however, provides for no flexibility to the exigencies of specific defendants. Some parts of the bond formula considered individually might be fair—for example double the $300.00 amount to protect a $300.00 judgment. However, the fairness of the bond requirements cannot be judged in separate increments of $300.00 plus $300.00 plus $1,032.00. The defendants were required to provide the total amount of $1,632.00 for a $300.00 judgment and future rent regardless that their rent might be reduced under the rules of the Housing Authority due to unemployment and regardless of any finding as to probable litigation time.

I do not agree that the two cases cited in the majority opinion are dispositive of the due process of law issue raised in this case. *State ex rel. Moats v. Janco,* 154 W.Va. 887, 180 S.E.2d 74, holds that a justice of the peace's lack of training does not make his holdings violative of due process. *Ortwein v. Schwab,* 410 U.S. 656, 93 S. Ct. 1172,

holds that a fee requirement for indigents to appeal an adverse welfare administrative decision does not violate the due process clause of the Fourteenth Amendment. These represent only two aspects of the basic unfairness implicit in the governmental treatment of the present defendants' attempt to secure economic and social justice.

It is true that the Fourteenth Amendment does not guarantee to every citizen access to our courts for all disagreements as to their respective rights. However, in *Boddie v. Connecticut,* 401 U.S. 371, the Supreme Court of the United States held that access to our legal system is guaranteed when (1) the litigants' interests are fundamental; (2) resort to the court is the sole path to relief; and (3) government control over the relief is exclusive.

*Boddie* involved an indigent's attempt to obtain access to a divorce court without payment of a fee and the right of a divorce was held to meet the above criteria. In *United States v. Kras,* 409 U.S. 434, 93 S. Ct. 631, it was decided that bankruptcy was not such a fundamental interest as to require access to the courts without any fee restriction. In *Patterson v. Warner,* 371 F. Supp. 1362 (S.D. W.Va.), it was held that relief from an automobile sales contract did not constitute in the defendant such a fundamental interest as to bring him within the *Boddie* due process rule. The *Boddie* decision held that the right to access to a divorce court "is the exclusive precondition to the adjustment of a fundamental human relationship"—marriage. *Boddie v. Connecticut, supra* at 383.

If access to our courts is necessary to adjust a marriage by breaking it up, it would seem to me to be more imperative that opportunity to preserve a marriage and family life be afforded by access to the courts. That is the fundamental human relationship involved here—the efforts of a father and mother to provide a home for their family in the face of economic adversity. This does not connote the bare commercialism of a sales contract nor the pure economic considerations of a bankruptcy

action, rather this attempt to preserve family life through court action touches most of the social concepts of a democracy. It is also true due to the circumstances of public housing and the indigent position of the defendants that resort to the courts was defendants' sole path to relief and that government control over the relief was exclusive.

The fact that defendants had a hearing before a justice of the peace, however, presents a more difficult problem. Once it is determined that a litigant has a Fourteenth Amendment right of access to a court, the hearing there, of course, must be "at a meaningful time and in a meaningful manner * * * appropriate to the nature of the case". *Boddie v. Connecticut, supra at* 378, citing *Armstrong v. Manzo,* 380 U.S. 545; *Mullane v. Central Hanover Tr. Co.,* 339 U.S. 306.

The defendants contend that due to the justice of the peace's lack of training he was not able to consider a defense available to them established by rules of the Department of Housing and Urban Development. This is a factual contention not sufficiently documented in the record for a proper resolution on appeal. However, where a defendant as here has a right to access to the courts and, in addition, there is a factual showing of a denial of a meaningful hearing before a justice of the peace, this should certainly be a denial of due process of law where because of his impecunious condition the defendant has no opportunity to proceed to another court where he could obtain his meaningful hearing.

I am authorized to state that Justice Haden joins in the views expressed in this concurring opinion.

HADEN, JUSTICE, concurring:

I respectfully concur. Concerning the matters contained in Syllabus Point 3 appended to the majority opinion, and the supporting discussion contained in the case, the majority of this Court considers the relators' Equal Protection argument pursuant to the Fourteenth

Amendment to the United States Constitution to be without merit. Mr. Justice Sprouse, applying the provisions of that amendment to the statute opines, to the contrary, the relators were denied Equal Protection in that the appeal bond requirements of *Code* 1931, 50-15-2, as amended, constitute unreasonable conditions precedent to their right of appeal. Although I am in agreement with the views expressed by Justice Sprouse, I believe the position taken by him and the majority overlook the more stringent Equal Access section of the West Virginia Constitution, Article III, Section 17, and the Appeal of Right provision of Article VIII, Section 28. It is my opinion that a proper application of these two provisions of our Constitution compels the conclusion that *Code* 1931, 50-15-2, as amended, contains unreasonable limitations which are invidious discriminations against indigents abridging their constitutional right to appeal from a decision of a squire which also deny them equal access to the appeal system.

In its discussion of the Equal Protection argument, the majority begins with a bald statement of a legal principle which I believe to be irrelevant to this case. The Court says due process does not require the State to provide an appeal system. Without arguing the correctness of this unqualified statement, I suggest the basic question which should have been answered in the majority's opinion is: when the Constitution guarantees an appeal from a decision of a justice of the peace, in what respect may the Legislature limit or condition that right?

Article VIII, Section 28 of the Constitution provides in part: "Appeals shall be allowed from judgments of justices of the peace in such manner as may be prescribed by law." The plain meaning of this language is apparent; Appeal of Right accorded a litigant in a justice court is subject only to legislative enactment providing the method for the exercise of such appeal.

Article III, Section 17 of the West Virginia Constitution provides:

"The courts of this State shall be open, and every person, for an injury done to him, in his person, property or reputation, shall have remedy by due course of law; and justice shall be administered without sale, denial or delay."

This section of the Constitution has been construed to be a clear mandate that all litigants, regardless of financial ability, are entitled to equal access to the judicial system. See, *State ex rel. Payne v. Walden,* 156 W.Va. 60, 190 S.E.2d 770 (1972), wherein this Court recently recognized that the double property value bond requirement of the Forthcoming Bond procedure under the West Virginia statute denies equal access to the courts to a person of low income: ". . . as effectively as if there were a statute that only tenants possessed of certain assets may use the courts." *Id.* at page 776 of the Southeastern Report. In accord is the holding of *Linger v. Jennings,* 143 W.Va. 57, 99 S.E.2d 740 (1957). There the Court refused to construe a statute, providing transcripts to indigent defendants for whom counsel had been appointed, to mean that indigents without such appointed counsel should be denied the transcript for purposes of appeal. To have done so would have constituted a denial of equal access to the courts forbidden by Article III, Section 17 of the West Virginia Constitution.

Tracing the interesting history of this section of the Constitution to its origin in the Magna Charta, this Court, in *McHenry v. Humes,* 112 W.Va. 432, 164 S.E. 501 (1932), discusses examples of the egregious judicial abuses inveighed against by this ancient provision:

" 'Some men used to pay fines to have or obtain justice or right; others, to have their right or their proceedings or judgment speeded; others, for stopping or delaying of proceedings at law; and *others were obliged to pay great and excessive fines* (viz., a fourth part, a third part, or half of the debt sued for) *to obtain justice* and right, according to their several cases, *so that the king seemed to sell justice and right to some and to delay or deny it to others.* Against these mischiefs a remedy was provided by a clause in the great

charters of liberties, made by King John and King Henry III. That clause in each of those charters runs in the same or consonant words, which are these: *Nulli venemus, nulli negabimus, aut differemus rectum aut justiciam.*' Mag. Char. Joh. 40; Char. Hen. III. 33." (Emphasis supplied). *Id.,* at page 436-37.

This case involved an increase authorized by the Legislature in fees chargeable by circuit clerks for the institution of suits. The Court recognized and adopted certain principles to test the validity of fee, cost and security statutes. It said such charges do not violate the Equal Access provision of the Constitution unless the statute (1) "requiring the payment . . . discriminates between parties who before the law are entitled to the same remedy under the same conditions."; (2) ". . . the imposition of costs is unreasonable, . . ."; or (3) ". . . it operates as a penalty on the exercise of the constitutional right to have rights and liabilities declared by the courts." *Id.,* at page 437. Under these guidelines, the Court in *McHenry,* held a fifteen dollar fee to be reasonable and not in violation of Article III, Section 17 of the Constitution.

Article VIII, Section 28 of the Constitution, *supra,* expressly delegates to the Legislature the manner by which the Appeal of Right from a justice's decision may be exercised. Certainly, the Legislature in the exercise of its police power may adopt any policy not proscribed by the Constitution. *Huntington v. State Water Commission,* 137 W.Va. 786, 73 S.E.2d 833 (1953); *Chapman v. Huntington Housing Authority,* 121 W.Va. 319, 3 S.E.2d 502 (1939); *State v. Peel Splint Coal Company,* 36 W.Va. 802, 15 S.E. 1000 (1892).

This writer recognizes and applauds the legitimate purpose of the Legislature in the enactment of provisions which protect judgments on appeal. Without the same, the force of lower court judgments would be effectively circumvented. Additionally, I recognize the State's interest in insuring protection of property rights to landlord appellees.

In accordance with the principles of the *McHenry* case, *supra,* the question is not then the recognized legislative prerogative of protecting these interests but rather the reasonableness of the means employed to accomplish the desired ends. Absent the possible abridgment of a constitutional right, courts are generally concluded from refuting the reasonableness of a legislative enactment. *Huntington v. State Water Commission, supra.* But in this case, the constitutional right of Equal Access to the judicial system and an Appeal of Right from a decision of a justice of the peace are directly involved.

It is not irrelevant to note that no other place in our Constitution is one given an appeal of right from any judgment of the courts of this State. Both the Equal Access provision and the Appeal of Right section of the Constitution are unique to the jurisprudence of this State; they are not mere renditions or restatements of obscure principles copied from the laws of our mother state. Their provisions are clear, their purpose unquestionable and their protections, therefore, should not yield easily to legislative restrictions not reasonably related to some legitimate and compelling State interest.

I firmly believe the statutory provisions attacked by relators which require both a bond in an amount double that of the judgment, and in addition, an amount equal to one year's rent as conditions precedent to the perfection of an appeal, are unconstitutional. As applied to poor people who are tenants, the statutory provisions create two distinct classes of appellant—those who are financially able to proceed by posting bond for the appeal, and those who cannot by reason of insufficient finances. Such provisions are disapproved by the *Payne, Linger,* and *McHenry* cases, *supra.* Tested by the strictures of *McHenry,* the security for appeal, discriminates between parties who are otherwise entitled to the same remedy under the same conditions, and constitutes a cost which is unreasonably burdensome to the right of appeal and access to a court of record, not related reasonably to the interest of protecting judgments and protecting landlords'

right in property. Thirdly, in the present case, to receive a hearing in a court of record that $300.00 in rent is not due and owing, the relators will be forced to post bond in the amount of $1,632.00, or vacate the premises.

Since 1933, this State has declared as its public policy that low income families may be provided with public-supplemented rental housing constructed by various public authorities. See, *Code* 1931, 16-15-2, 16-16-2, and 31-18-2, as amended, for representative legislative findings. In other words, there is a recognized compelling State interest in creating better housing for people of all economic stations and in eradicating the evils destructive of public safety, health and welfare incident to substandard housing. To a poor person who enjoys the aid of the State in securing adequate housing, but who also has some grievance in relation to his status as a tenant, is it a reasonable exercise of State power to tell him "shut up, pay up, or leave", or post a bond in the amount of $1,632.00 for the privilege of contesting his claim to housing in a court of record? I think not, and I suggest there should be some reasonable correlation between the policy which grants rent supplemented adequate housing to low income tenants and the policy which exacts a very large bond security from those who wish to resolve disputes concerning housing in the court, rather than on the streets.

It appears to me that such security provision, as it operates upon the rights of the relators, is a proscribed penalty on the exercise of their constitutional right to seek vindication in a court of record and denies them equal access to that court.

I am authorized to say that Justice Sprouse agrees with the views expressed in this concurring opinion.