## 20805

STATE of South Carolina ex rel. Daniel R. McLEOD, Plaintiff, v. Roger A. CROWE in his official capacity as Magistrate of the Liberty Magisterial District of Pickens County, South Carolina, and as a representative of all other magistrates in Pickens County, South Carolina, similarly situated, Defendant, et al.

STATE of South Carolina ex rel. Daniel R. McLEOD, Plaintiff, v. Lucile B. WILSON in her official capacity as Magistrate of Georgetown County, South Carolina, and as a representative of other similarly situated magistrates, Defendant.

STATE of South Carolina ex rel. Daniel R. McLEOD, Plaintiff, v. John K. TOAL in his official capacity as Magistrate of the Dutch Fork Magisterial District of Richland County, South Carolina, and as a representative of all other magistrates in Richland County, South Carolina, Defendant.

STATE of South Carolina ex rel. Daniel R. McLEOD, Plaintiff, v. Dixie S. ROBINSON in her official capacity as Magistrate of the Beaufort Township of Beaufort County, South Carolina, Defendant.

STATE of South Carolina ex rel. Daniel R. McLEOD, Plaintiff, v. Robert E. WINGARD in his official capacity as Magistrate of the Ninety Six Township of Greenwood County, South Carolina, and as a representative of all other magistrates in Greenwood County, South Carolina, similarly situated, Defendant.

STATE of South Carolina ex rel. Daniel R. McLEOD, Plaintiff, v. J. Fred SPIRES in his official capacities as Magistrate of District No. 6 of Lexington County, South Carolina, and as Administrator of the Check Clearing House for Lexington County, South Carolina, Defendant.

STATE of South Carolina ex rel. Daniel R. McLEOD, Plaintiff, v. James E. GABLE in his official capacity as Magistrate of District No. 5 of Lexington County, South Carolina, and as a representative of all other magistrates in Lexington County, South Carolina, similarly situated, Defendant.

STATE of South Carolina ex rel. Daniel R. McLEOD, Plaintiff, v. Walter JONES in his official capacities as Magistrate of the Columbia Magisterial District of Richland County, South Carolina, and as Director of the Check Clearing House for Richland County, South Carolina, Defendant.

STATE of South Carolina ex rel. Daniel R. McLEOD, Plaintiff, v. Jack P. CANN in his official capacities as Magistrate for and Director of the Check Clearing House for Greenville County, South Carolina, Defendant (Nine Cases).

George W. JEFFERSON, James W. Douglas and James E. Gable, Petitioners, v. LEXINGTON COUNTY COUNCIL and the State of South Carolina, Defendants.

(249 S. E. (2d) 772)

*Atty. Gen. Daniel R. McLeod, Deputy Atty. Gen. C. Tolbert Goolsby, Jr., and Sr. Asst. Atty. Gen. Karen LeCraft Henderson,* Columbia,, *for plaintiff.*

*Sylvan L. Rosen of Rosen & Rosen,* Georgetown, *for defendant Lucile B. Wilson, Magistrate and as a representative of other similarly situated magistrates.*

*Felix L. Finley, Jr.,* Pickens, *for defendant Roger A. Crowe, as Magistrate and all other magistrates similarly situated in* Pickens County.

*Asst. Atty. Gen. Charles H. Richardson,* Columbia, *and G. P. Callison,* Greenwood, *for defendant Robert E. Wingard, as Magistrate and all other magistrates in* Greenwood County.

*Asst. Atty. Gen. Charles H. Richardson,* Columbia, *for defendant James E. Gable, as Magistrate and a representative of all other magistrates in* Lexington County.

*Joseph H. Earle, Jr., and James H. Lengel,* Greenville, *for defendant Jack P. Cann, as Magistrate.*

*William F. Able,* Columbia, *for defendant J. Fred Spires, Magistrate of Dist No. 6 of Lexington County and as Administrator of the Check Clearing House for* Lexington County.

*Charles Porter,* Columbia, *for defendant Walter Jones, as Magistrate of* Columbia *Magisterial Dist. of* Richland County and *as Director of the Check Clearing House for* Richland County, and *for defendant John K. Toal, as Magistrate* and *as a representative of all other magistrates in* Richland County.

. . *Asst. Atty. Gen. Charles H. Richardson,* Columbia, and *Ladson F. Howell,* Beaufort, *for. defendant Dixie S. Robinson in her official capacity as Magistrate of the* Beaufort *Tp. of* Beaufort County, `S. C.

*J. Leeds Barroll,* Columbia, *for petitioners.*

*Archie Harman,* Lexington, *for defendant* Lexington County Council.

*Staff Atty. James M. Holly,* Columbia, *for defendant* State of S. C.

November 13, 1978.

*Per Curiam:*

Pursuant to our Order of July 28, 1978, this declaratory judgment action was brought in the Original Jurisdiction of this Court. This action, the result of the consolidation of several complaints, was brought on the relation of the Attorney General, Daniel R. McLeod, to determine the constitutionality of a number of statutes relating to magistrates.

The State challenges the various statutes on several grounds. Initially it asserts some of the enactments violate Article V, Sections 1 and 23 of the South Carolina Constitution which require all judicial power be vested in a unified judicial system. The State also contends several of the stat-

utes conflict with Article III, Section 34, subdivision IX of the South Carolina Constitution which proscribes local or special legislation in situations where general law can be made applicable. Lastly, the State alleges those regulations which allow magistrates to collect fees in certain cases violate the due process clause of the State and Federal Constitutions.

Prior to addressing these actions individually, four pivotal issues must be decided by this Court. They are: (1) Whether magisterial courts are included in this State's uniform judicial system; (2) whether legislation establishing varying territorial jurisdictions is unconstitutional; (3) whether fees charged in magisterial courts must be uniform; and (4) whether judicial officers may accept fees derived from their performance of judicial acts.

With reference to the first question presented, Article V, Section 1 of the South Carolina Constitution provides:

The judicial power shall be vested in a unified judicial system, which shall include a Supreme Court, a Circuit Court, and such other courts of uniform jurisdiction as may be provided for by general law.

Article V, Section 23 specifically includes magistrates within this unified system providing that:

The Governor, by and with the advice and consent of the Senate shall appoint a number of magistrates for each county as provided by law. The General Assembly shall provide for their terms of office and their civil and criminal jurisdiction . . .

When these two provisions are read together it clearly appears that magisterial courts are vested with judicial power and are, therefore, a part of the State's uniform judicial system.

The second broad question requiring consideration is whether special legislation establishing unequal territorial jurisdiction of magistrates within counties and differing jur-

isdiction between counties violates the provisions of Article V, Section 1 and 23. Under the present statutes the territorial jurisdiction of magistrates varies in many instances among the counties and between magistrates within the same county. See Section 43-501 *et seq.* of the 1962 Code of Laws, as amended, for the various provisions establishing different jurisdiction, for magistrates in the various counties. For example, in some counties magistrates have countywide jurisdiction; in other counties magistrates have jurisdiction in magisterial districts which are less than countywide in territory; others have magistrates with countywide civil jurisdiction and districtwide criminal jurisdiction; while another has a magistrate who has exclusive criminal and civil jurisdiction within his district and at the same time concurrent jurisdiction throughout the county.

We pointed out in *Cort Industries Corp. v. Swirl, Inc.,* 264 S. C. 142, 213 S. E. (2d) 445 that

The people in approving Article V mandated a uniform system of courts for the administration of justice in South Carolina.

Magistrates' Courts are a part of the unified judicial system, mandated by Section 1 of Article V and, therefore, are included within the requirements for uniformity prescribed by that Article.

Sections 1 and 23 of Article V require that the jurisdiction of magistrates be uniform throughout the State. Such uniformity can only be accomplished through legislation which grants all magistrates uniform countywide jurisdiction.

The third question to be considered is whether the fees charged in magistrate courts must be uniform throughout the State. Statutes have been enacted for several counties establishing different fee schedules for the magistrate courts.

Legislation establishing disparate fee schedules for magistrate courts over the State conflicts with the uniformity requirements of Article V. Section 23 of

Article V, interpeted in conjunction with Section 1 of that Article, empowers the General Assembly to provide for the jurisdiction of magistrates in a uniform manner only. The exercise of such jurisdiction is materially affected by the fees allowed to be charged or assessed. Since the fees for magistrate courts affect the exercise of jurisdiction, they must be enacted on a uniform basis.

Lastly, we must determine whether magistrates may accept fees derived from their performance as judicial officers. We conclude that they may not. In the context of criminal law, the United States Supreme Court has concluded a judicial officer should be disqualified from sitting in any case in which he possesses a pecuniary interest through fees, forfeiture or fees paid by the litigants. See *Tumey v. Ohio,* 273 U. S. 510, 47 S. Ct. 437, 71 L. Ed. 749. This proscription is based on the theory that such pecuniary interest deprives the litigants of due process of law. Id. In recognition of the requirements of due process, magistrates are precluded by statute from receiving fees in criminal cases. See S. C. Code Sections 22-7-30 and 22-7-40. We believe the potential for deprivation of due process also exists in civil matters where judicial officers possess a pecuniary interest in the outcome of litigation.

In *State, ex rel. Reece v. Gies,* 156 W. Va. 729, 198 S. E. (2d) 211 (1973) a statutory scheme which afforded justices of the peace a financial interest in the result of civil litigation was held unconstitutional. Moreover, in *State, ex rel. Shrewsbury v. Poteet,* 202 S. E. (2d) 628 (W. Va. 1974) the Court concluded a justice of the peace must be disqualified despite the fact that a standard fee was charged in civil actions regardless of the prevailing party. Recently, in *Ward v. Monroeville,* 409 U. S. 57, 93 S. Ct. 80, 34 L. Ed. (2d) 267 (1972) Justice Brennan, speaking for the Court, set forth a test for determining whether a fee system possesses constitutional validity:

"Whether the . . . situation is one 'which would offer a possible temptation to the average man as a judge to forget

the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the State and the accused.' "

While the facts in Ward involved a criminal proceeding, we believe the above principle is equally applicable to civil matters. See *State, ex rel. Shrewsbury v. Poteet, supra.*

Several of the instant actions challenged statutes which authorized magistrates to collect and retain fees received for the performance of judicial acts. To the degree such statutes vest judicial officers with a pecuniary interest in the proceedings before them, they violate Article I, Section 3 of the South Carolina Constitution and are likewise impermissible under the Fourteenth Amendment of the United States Constitution.

In light of our conclusions concerning the broad questions presented by these actions, we now consider the specific statutes involved.

### *State, ex rel. McLeod v. James E. Gable, etc.*

Turning first to *State, ex rel. McLeod v. James E. Gable, etc.,* it is apparent that a violation of Article V. Section 1 and 23 of the South Carolina Constitution is presented. Section 1 of Act 172 of 1973 [58 Stat. 203 (1973)] as amended by Act 113 of 1975 [59 Stat. 117 (1975)] authorizes magistrates in Lexington County to collect fees for specific functions. In enacting legislation applicable only to Lexington County magistrates, Act 172, as amended, deviates from the general law relating to magisterial fees. Section 22-7-40 Code of Laws of South Carolina of 1976 provides:

It shall be unlawful for any salaried magistrate in this State to receive any compensation for his services in criminal·cases other than his salary or to receive for his own use any portion of his constable's fees or salary in any criminal cases whatsover, whether such cases are actually tried, compromised or transferred for investigation to the court of gen-

eral sessions. Any magistrate who shall violate the provisions of this section shall be guilty of a misdemeanor and, upon conviction thereof, shall be fined not less than fifty dollars and not more than two hundred dollars or imprisoned for not less than thirty days and not more than six months, or both so fined and imprisoned, at the discretion of the court. Clearly the General Assembly intended that magisterial fees should be established on a uniform statewide basis. Since the challenged legislation sets Lexington County magistrates apart from the unified judicial system, it is invalid.

### *State, ex rel. McLeod v. Dixie S. Robinson, etc.*

Similarly, in *State, ex rel. McLeod v. Dixie S. Robinson, etc.*, the challenged statute excepts the Beaufort Township magistrate from the requirements of the uniform judicial system. Act 711 of 1976 [59 Stat. 2162 (1976)] vests the magistrate of Beaufort Township with countywide jurisdiction. Not only does this provision create a disparity among statewide magisterial jurisdictions, it also sets the jurisdiction of Beaufort Township magistrates apart from other magistrates within Beaufort County. Accordingly, it violates Article V, Section 1.

### *State, ex rel. McLeod v. Robert E. Wingard, etc.*

The statute challenged in this action is Act 1245 of the 1970 Acts of the General Assembly, which establishes a fee schedule applicable to only Greenwood County magistrates. Although the fees charged are not retained by the magistrates in Greenwood County, the legislation, nevertheless, conflicts with the uniformity requirements of Article V, Sections 1 and 23. As previously pointed out, the fees for magistrates courts affect the exercise of jurisdiction and must be uniform throughout the State.

Defendant Wingard's assertion, that Act 503 of 1973, enacted pursuant to Article V, Section 22 specifically permits Wingard's court in Greenwood County to continue with all the powers and duties vested therein prior to the ratifi-

cation of Article V, is incorrect. Act 503 of 1973 applies only to statutorily created courts and not courts which were retained either expressly or impliedly by provisions of new Article V. As noted in *State v. Civil and Criminal Court of Horry County, S. C. et al.,* 265 S. C. 114, at 116, 217 S. E. (2d) 23, at 24 (1973) Article V, Section 22 protected only those ". . . statutorily created courts which were not of uniform jurisdiction and part of the unified judicial system . . ." Magisterial courts which continued by virtue of the constitution remained unaffected by Section 22 of Article V and Act 503.

### *State, ex rel. McLeod v. John K. Toal, etc.*

The State contends Section 43-976 1952 Code as amended by Act 953 of 1962 which provides separate and exclusive territorial jurisdiction for Richland County magistrates violates Article V, Section 1. We agree. The challenged statute fails to establish uniform territorial jurisdiction for Richland County magistrates and, thus, contravenes Article V, Section 1's mandate for unified system. Moreover, this statute conflicts with Section 23 of Article V by failing to provide for the exercise of civil and criminal jurisdiction of magistrates in a unified manner. Accordingly, the statute cannot stand.

### *State, ex rel. McLeod v. Walter Jones, etc.*
### *State, ex rel. McLeod v. J. Fred Spires, etc.*
### *State, ex rel. McLeod v. Jack P. Cann, etc.*

The statutes challenged in each of these actions established Check Clearing Houses for South Carolina counties. Act 953 of 1962 created a Richland County Check Clearing House, Act 189 of 1973 set up a Lexington County Check Clearing House and Act 19 of 1975, as amended, established a Greenville Check Clearing House. Check Clearing Houses are defined by statute as "public records offices" under the supervision of a magistrate who is designated as an administrator or director thereof. The State contends the Check Clearing Houses established by these

statutes fail to further Article V's goal of a statewide unified judicial system. We agree. In each of these actions the special Check Clearing Houses were effectuated by special legislation and not by means of a general law. The defendant magistrates operating Check Clearing Houses possess countywide jurisdiction while other magistrates in their own counties do not. The effect of this disparity is to perpetuate the old, nonuniform judicial system. Accordingly, these statutes violate the mandates of Article V, Section 1.

*State, ex rel. McLeod v. Roger A. Crowe, etc.*

Here the State questions the validity of Section 27-437 (1962) whereby magistrates retain, as compensation, fees charged by them in civil proceedings. In lieu of the fees specifically enumerated in this section defendant Crowe, as well as other Pickens County magistrates have heretofore charged the sum of Ten ($10.00) Dollars for each civil proceeding handled by them and retained this fee as part of their compensation. Clearly Section 27-437 (1962) and the procedure resulting therefrom violate the due process clause of both the State and Federal Constitution since they confer upon magistrates a pecuniary interest in the subject matter of civil proceedings before them. Our conclusion that Section 27-437 (1962) violates the due process clause of the South Carolina Constitution is not predicated upon an actual showing of abuse by Magistrate Crowe or other Pickens County magistrates; the potential for abuse present here invalidates the fee system.

*State, ex rel. McLeod v. Lucile B. Wilson, etc.*

This action challenges the constitutionality of Sectoin 27-422 of the 1962 Code of Laws, as amended, which permits magistrates in certain counties to collect fees from defendants whose prosecutions for violation of the fraudulent check statute (Section 34-11-60 of the 1976 Code of Laws) are discontinued by settlement or compromise. It is contended that this statute denies defendants, charged with fraudulent check violations in these counties,

due process of law because it deprives them of a neutral and detached judicial officer. We agree.

The fee system approved by Section 27-422, 1962 Code of Laws, as amended, vests magistrates with a direct pecuniary interest in the outcome of the case. As we noted herein in disposing of *State ex rel. McLeod v. Roger A. Crowe,* no proof of actual bias need be shown by the State; the possibility of bias inherent in the permitted fee system invalidates the statute.

### *Jefferson, et al. v. Lexington County Council, et al.*

The issues presented by this action are identical to those presented in *State, ex rel. McLeod v. J. Fred Spires, etc., infra;* our decision there is dispositive of this case.

In view of our conclusion that six of the challenged enactments violate Article V, Sections 1 and 23, we have not reached the question of whether these provisions are also rendered unconstitutional by Article III, Section 34, (IX).